United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 3, 2003**

Charles R. Fulbruge III
Clerk

**REVISED APRIL 4, 2003**

**UNITED STATES COURT OF APPEALS
For the Fifth Circuit**

No. 02-20377

CLIFTON HALL

Plaintiff-Appellant,

VERSUS

GE PLASTIC PACIFIC PTE LTD. ET AL.

Defendants

GENERAL ELECTRIC COMPANY

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Texas, Houston

Before JONES, WIENER and DeMOSS Circuit Judges.

DeMOSS, Circuit Judge:

Clifton Hall, Jr. ("Hall"), the plaintiff-appellant, brought a personal injury lawsuit, in Texas state court, against GE Plastic Pacific PTE Limited and General Electric Company (collectively, "GE") claiming GE had manufactured an extension cord that was allegedly the cause of a fire in which Hall was severely burned.

The matter was removed to federal court and then referred to a magistrate judge. GE moved for summary judgment based on judicial estoppel. The magistrate judge applied federal law and recommended granting GE's motion. After *de novo* review, the district court adopted the magistrate's memorandum and recommendation and granted GE's motion and entered final judgment. Hall now appeals claiming state law should have been applied and judicial estoppel was inappropriate.

## BACKGROUND

This is the second lawsuit that Hall has filed to recover for injuries he suffered on July 30, 1996, when he was burned in a fire at his grandparents's home. In July of 1998 Hall, then 15 years old, and other injured parties, brought the first lawsuit in a Texas state court. As discovery proceeded in the lawsuit, Hall, through a next friend, alleged that the fire was caused by a faulty electrical extension cord, that the cord was purchased at a Wal-Mart store, and that various companies were responsible as manufacturer of the cord. The case was removed to the United States District Court for the Southern District of Texas and placed before Judge Vanessa Gilmore, the same judge who presided over the present case.

On May 14, 1999, Hall amended his complaint to include claims against Pacific Electricord Company ("Pacific") and Woods Industries, Incorporated ("Woods"). Ultimately, Hall obtained an

2

affidavit indicating that the cord was purchased from a Wal-Mart store and answers from Wal-Mart to interrogatories indicating that Wal-Mart only sold cords manufactured by Pacific and Woods. Pacific persuaded Hall that it did not manufacture the cord and Hall agreed to dismiss claims against Pacific.

Hall then moved for Interlocutory Summary Judgment against Wal-Mart and Woods, claiming "Woods is the only remaining manufacturer." Woods also moved for summary judgment claiming it did not manufacture the cord and supported its claim with an affidavit from an expert who suggested that GE *may* have manufactured the cord. In his Response and in his Supplemental Response to Woods's Motion for Summary Judgment, Hall challenged this evidence claiming, "Woods remains as the only possible and viable manufacturer and/or supplier" and "[t]he remnant cord is a Woods product." Additionally, on May 8, 2000, in an affidavit Hall's attorney stated, "Plaintiffs believe that the combination of the documents and the deposition testimony of [Woods's expert] will show from Woods'[sic] own resources that Woods or one of Woods'[sic] manufacturers, distributors or suppliers was the creator of the extension cord which is the subject of this litigation."[1]

While these motions were pending, Woods moved for leave to file a third party complaint against GE. Hall opposed this motion and

---

[1]Hall has been represented by the same attorney, Mr. Joe W. Meyer, in both the previous lawsuit and this current lawsuit.

argued that "[t]he totality of the evidence discovered demonstrates Woods supplied the subject extension cord" and that GE was not a necessary and indispensable party because there could be only one manufacturer of the extension cord. On July 19, 2000, the district court denied Woods's motion for leave to file a third party complaint against GE. The next day, in a minute entry, the court denied both Hall's and Woods's motions for summary judgment.

On August 25, 2000, Judge Gilmore held a pretrial hearing. At the hearing the court questioned why the case should go to trial if Hall could not prove Woods was the manufacturer. Hall's attorney insisted that he could prove that Woods was the manufacturer. The court then asked the parties if they had tried to talk about the case and resolve the matter. The court then indicated the case should be set for trial.

On September 27, 2000, Hall's attorney sent letters to two expert witnesses informing them that the case had settled but requesting that they keep their files open because he "anticipate[d] further prosecution of this case against General Electric." Some time in October of 2000, Hall and the other plaintiffs reached formal settlement with Woods, Wal-Mart, and the defendants's insurance underwriter, Wausau Underwriters Insurance Company ("Wausau"). The defendants collectively settled for $15 million and the plaintiffs agreed to dismiss the claim. On October 4, 2000, the district court entered final judgment giving counsel the right to reinstate the suit if the settlement was not consummated.

4

On November 24, 2000, Hall filed the current lawsuit against GE in Texas state court. Hall, the sole plaintiff, now claims that GE, not Woods, manufactured the extension cord. In mid-December, while the suit was pending in state court, Hall entered into a "reimbursement agreement" with Wausau. Wausau agreed to cover Hall's expenses in this current litigation in return for Hall sharing proportionately any recovery with Wausau up to Wausau receiving a maximum amount equal to the amount Wausau paid Hall to settle the previous suit.

On January 5, 2001, GE removed the case to federal court on diversity grounds and the case was assigned to Judge Gilmore who referred all pretrial matters to Magistrate Judge Mary Milloy. On May 11, 2001, GE moved for summary judgment. GE argued that Hall was judicially estopped from pursuing the second suit because Hall was arguing a position that is inconsistent with his earlier claim that *only* Woods was the manufacturer of the extension cord. Hall successfully asserted this earlier claims, and Hall should not be allowed to manipulate the court system into allowing him double recovery. Hall argued that state law should apply and judicial estoppel is inappropriate.

On January 23, 2002, the magistrate judge issued a Memorandum and Recommendation that first considered whether federal law should apply and then applied federal law concerning judicial estoppel and concluded that judicial estoppel is applicable and GE's motion

5

should be granted. Hall filed several objections but on February 28, 2002, after *de novo* review, Judge Gilmore adopted the Memorandum and Recommendation in full and entered final judgment.

Hall timely filed notice of appeal and claims the district court erred because Texas, not federal, law concerning judicial estoppel should apply in this case and that the "elements" of judicial estoppel have not been satisfied and therefore GE's motion for summary judgment should not have been granted. GE argues that applying federal law is appropriate, although irrelevant because Texas law requires Hall's claims to be estopped as well, and the district court was correct in finding judicial estoppel and granting GE's motion.

## DISCUSSION

### I. Whether the district court erred in applying federal, not state, law on the issue of judicial estoppel.

Whether the district court applied the proper law is subject to *de novo* review. *Woodfield v. Bowman*, 193 F.3d 354, 358 (5th Cir. 1999). "Federal courts apply state substantive law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings." *Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). To determine whether an issue is substantive or procedural, this Court must consider the "twin aims" of *Erie*: the discouragement of forum shopping and the avoidance of

6

the inequitable administration of the laws. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991).

Application of federal law was appropriate in this case for two reasons that are consistent with the aims of *Erie*. First, in the instant case, the application of federal law is not outcome determinative because Texas law would likely require the same result and therefore applying federal law does not encourage forum shopping. *See Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 537 (1958) (outlining the role of outcome in the *Erie* analysis); *see also Zipp Indus. v. Ranger Ins. Co.*, 39 S.W.3d 658, 665 (Tex. App. -- Amarillo 2001, no writ) (stating that under Texas law "if a party takes an affirmative position in a proceeding and is successful in having the court adopt its position, the party doing so may be judicially estopped from later taking an inconsistent position in that or in another proceeding, even though the prior action is not a sworn declaration"). Second, although many courts have simply assumed that either federal or state law applies and therefore have applied either federal or state law without analysis, the majority of cases to consider the question have concluded that federal law should apply because a federal court should have the ability "to protect itself from manipulation" and this ability should not vary in a diversity action because it is a matter of federal procedure and not a substantive concern. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 602-04

7

(9th Cir. 1996) (discussing diversity cases applying federal and state law on judicial estoppel); *see also* **New Hampshire v. Maine**, 532 U.S. 742, 749 (2001) (stating the purpose of judicial estoppel is "to protect the integrity of the judicial process"); **Johnson v. Oregon**, 141 F.3d 1361, 1364 (9th Cir. 1998) (finding "[f]ederal law governs the application of judicial estoppel in federal courts"); **Edwards v. Aetna Life Ins. Co.**, 690 F.2d 595, 598 n.4 (6th Cir. 1982) (stating that the judicial estoppel "question primarily concerns federal interests"). Moreover, some older Fifth Circuit cases have held that state law applies when "nonfederal issues are at stake," **Continental Cas. Co. v. McAllen ISD**, 850 F.2d 1044, 1046 n.2 (5th Cir. 1988), but generally this Circuit considers judicial estoppel "a matter of federal procedure" and therefore applies federal law. **Ergo Science, Inc. v. Martin**, 73 F.3d 595, 600 (5th Cir. 1996); *accord* **Grigson v. Creative Artists Agency, L.L.C.**, 210 F.3d 524, 530 (5th Cir. 2000). Therefore, the application of federal law concerning judicial estoppel is appropriate in this case because both suits filed by Hall ended up in federal court and it is the federal court that is subject to manipulation and in need of protection. Accordingly, the district court's adoption of the magistrate's application of federal law is affirmed.

**II.  Whether the district court erred in granting GE's motion for summary judgment based on judicial estoppel.**

Summary judgment is appropriate if no genuine issue of material

fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). While a grant of summary judgment is generally reviewed *de novo*, this Court applies the same standard applied in the district court and a "district court's invocation of judicial estoppel is reviewed for abuse of discretion." ***Ahrens v. Perot Systems Corp.***, 205 F.3d 831, 833 (5th Cir. 2000); *accord* ***New Hampshire***, 532 U.S. at 750 (stating "judicial estoppel is an equitable doctrine invoked by a court at its discretion"); ***In re Coastal Plains, Inc.***, 179 F.3d 197, 205 (5th Cir. 1999) (stating judicial estoppel is an equitable doctrine, and the decision whether to invoke it is within the court's discretion).

Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." ***Ergo Science***, 73 F.3d at 598. The purpose of the doctrine is to prevent litigants "from 'playing fast and loose' with the courts . . . ." ***Id***. In this Circuit, "two bases for judicial estoppel" must be satisfied before a party can be estopped. ***Ahrens***, 205 F.3d at 833. First, it must be shown that "the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position." ***Id***.

### A. Clearly Inconsistent Positions

GE argues that Hall's allegation that GE is the manufacturer of

the electric cord is clearly inconsistent with the position Hall asserted in the prior lawsuit that only Woods could be the manufacturer. Hall responds that he never made a "sworn" statement that is clearly inconsistent with the position he now asserts and that statements made by his attorney, co-parties in affidavits, in the pleadings, or in the settlement agreement in the previous litigation are not sufficient to satisfy the requirements of judicial estoppel.

Statements made in a previous suit by an attorney before the court can be imputed to a party and subject to judicial estoppel. *New Hampshire*, 532 U.S. at 753 (statements made at oral argument); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1047 (5th Cir. 1998) (statements made at charge conference); *Ergo Science*, 73 F.3d at 598 (statements made at pretrial hearing). Here, Hall's attorney made the statements to the court in the pleadings, his own motions, in response to Woods's motions, and at the pretrial hearing. This Circuit has indicated that the doctrine applies to more than just sworn statements of a party and likewise has never specifically stated that it applies only to a party's sworn statements. *See, e.g., Ahrens*, 205 F.3d at 835 (requiring only the presence of inconsistent statements, although the statements at issue were sworn statements); *Afram Carriers Inc. v. Moeykens*, 145 F.3d 298, 304 n.12 (5th Cir. 1998) (assuming, without holding, "that representations that a plaintiff makes in its complaint are

10

subject to the doctrine of judicial estoppel"); *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir. 1988) (stating "a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position").

Hall also argues that cases applying judicial estoppel to statements made by a party's attorney only involve circumstances where the attorney made a "concession." However, there is no such "concession" requirement that must be met before applying judicial estoppel based on the statements of a party's attorney. *See, e.g., New Hampshire*, 532 U.S. at 752, 756 (focusing on a party's "position," "oral argument," and "interpretation"); *Ergo Science*, 73 F.3d at 598 (stating "judicial estoppel prevents a party from asserting a *position* in a legal proceeding that is contrary to a *position* previously taken in . . . some earlier proceeding") (emphasis added). Further, Hall's attempt to assert that GE is the manufacturer is contrary to the "general principles of judicial estoppel" which state "a party cannot advance one argument and then, for convenience or gamesmanship after that argument has served its purpose, advance a different and inconsistent argument." *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 818 (5th Cir. 2002).

Hall also claims that his current statements are not inconsistent with any previous statements because the earlier statements concerned future actions and were not unequivocal. Hall's argument

in this case is not a factually accurate representation of what occurred in the earlier lawsuit and, moreover, is contrary to Fifth Circuit precedent.

This case is similar to *Ahrens v. Perot Systems Corporation*, 205 F.3d 831 (5th Cir. 2000). In that case, Wendy J. Ahrens ("Ahrens") was discharged from Perot Systems Corporation ("Perot Systems"), and she filed a state court action, alleging that several other individuals and companies, including International Business Machines Corporation ("IBM"), "had tortiously interfered with her employment with Perot Systems." 205 F.3d at 832. IBM claimed fraudulent joinder and removed the action to federal court. *Id*. at 834. In a motion for remand, Ahrens submitted a sworn declaration that "[t]he IBM defendants disparaged [her] to Perot Systems and requested that Perot Systems terminate [her]." *Id*. The district court granted the remand. *Id*. Ahrens then filed for an injunction, claiming "Perot Systems terminated [her] employment as *a direct result of the interference by the IBM Defendants." Id*. (emphasis original). In a later deposition, Ahrens testified that she was terminated from Perot Systems because a defendant "tort[i]ously interfered with [her] employment contract." *Id.* While the state action was pending, Ahrens filed a separate suit against Perot Systems in federal court, claiming that her discharge was based on her gender and disability. *Id*. at 833. In a deposition taken in that federal discrimination suit, Ahrens was

12

asked, once again, the reason for her termination. *Id*. at 834-35. She answered, "I was terminated from Perot Systems because of my sex . . . and . . . because of the fact that I was considered damaged goods or handicapped and unable to provide value to the company." *Id*. at 835 Following her deposition, Perot Systems moved for summary judgment, arguing that "Ahrens was judicially estopped from pursuing her discrimination claims" because the district court in the tortious interference action had relied on her earlier, but inconsistent, statements when it granted her motion to remand the first suit to state court. *Id*. at 833. Ahrens, like Hall, claimed that judicial estoppel was inapplicable because there was "no inconsistency in her positions in the two actions." *Id*. at 835. She maintained that:

> [S]he [had] never claimed, or been required to prove, that her discharge was caused *solely* either by tortious interference or by discrimination. She assert[ed] that her statements in the first action (discharged because of tortious interference) were *not* admissions that there were no other causes for discharge; and that, even if tortious interference was part of the reason for discharge, it would *not* foreclose finding discrimination was also part of the motivation for it.

*Id*. (emphasis original). The district court rejected that argument as "no more than ineffectual hair splitting," and it granted summary judgment for Perot Systems. *Ahrens v. Perot Sys. Corp.*, 39 F. Supp. 2d 773, 778 (N.D. Tex. 1999). The Fifth Circuit affirmed the judgment. 205 F.3d at 832. In doing so, we explained that,

13

> [Ahrens's] attempt to reconcile her inconsistent positions on the basis that she was never asked for the *sole* reason for discharge is unavailing . . . . In each action, she was asked: why were you terminated. For each action, she gave a glaringly inconsistent, all-encompassing, non-qualified response. For the first action, discharge was due to tortious interference; for the second, discrimination. Accordingly, the first requirement for judicial estoppel-use of inconsistent positions-is satisfied.

*Id*. at 835.

Here, Hall's lawyer was asked specifically if he could prove that "Woods is the one who designed, who manufactured this cord." He answered unequivocally, "I can prove that Judge . . . . I can put this at the doorstep of Woods Industries." Hall argued, repeatedly, that no other manufacturer of the cord was a possible tortfeasor: "Woods is the *only* remaining manufacturer;" "Woods remains as the *only* possible and viable manufacturer and/or supplier;" "The remnant cord is a Woods product;" "[T]here can be *only one* manufacturer of the extension cord."

In contrast, Hall's current position is that "[t]he fire was caused by defects in the extension cord which was manufactured" by GE. This statement is clearly inconsistent with Hall's prior assertion that the only possible manufacturer of the cord was Woods. Hall's argument that he never admitted that Woods was the manufacturer of the extension cord in question or that General Electric was not the manufacturer is "no more than ineffectual hair splitting." *See* **Ahrens**, 39 F. Supp. 2d at 778. The manufacturer of the cord cannot be Woods in the first action but GE in the

14

second.  Likewise, there cannot be only one identifiable manufacturer in the first action, but several possible manufacturers in the second.  Accordingly, the district court did not abuse its discretion in finding the first bases for judicial estoppel-use of inconsistent positions-was satisfied.

## B.    *Acceptance of Prior Position*

GE argues that because the district court relied on Hall's statement, ruled on Hall's behalf concerning procedural matters (i.e., preventing Woods from joining GE and denying Woods's Motion for Summary Judgment), and dismissed the case after Hall received a 15 million dollar settlement, Hall successfully maintained his position in the prior suit for purposes of judicial estoppel.  Hall counters that the district court never accepted or adopted any of his statements and the procedural rulings and settlement do not satisfy the success requirement.

The purpose of the prior success or "judicial acceptance" requirement is to "minimize[] the danger of a party contradicting a court's determination based on the party's prior position and, thus, mitigate[] the corresponding threat to judicial integrity." *Coastal Plains*, 179 F.3d at 206.  The previous court's acceptance of a party's argument could be "either as a preliminary matter or as part of a final disposition." *Id*.  "The 'judicial acceptance' requirement does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the

15

merits." *Id*. Our cases suggest that doctrine may be applied whenever a party makes an argument "with the explicit intent to induce the district court's reliance." *Hidden Oaks*, 138 F.3d at 1047. Again in *Ahrens*, a case similar to the present case, we stated that when a court "necessarily accepted, and relied on" a party's position in making a determination, then the prior success requirement is satisfied. *See **Ahrens***, 205 F.3d at 836 (relying on a party's position when remanding a case).

The district court in the present case did not rely only on the settlement as an indication of prior success nor did the court imply that a party cannot plead alternative theories nor did the court imply that the earlier court adopted Hall's factual assertions. Rather, the district court found that in deciding the summary judgment motions and the joinder motion, the previous court "necessarily accepted, and relied on" Hall's statements in resolving the conflict between the contradictory evidence (i.e., Hall's claim that only Woods could be the manufacturer and therefore GE should not be joined as opposed to Woods's claim that it was not the manufacturer). Therefore, the district court did not abuse its discretion in finding that Hall's earlier position had been accepted and, to protect the integrity of the court, in refusing to let Hall assert a position that is inconsistent with the position he previously asserted.

## C.   *Other Factors*

In **New Hampshire**, the Supreme Court outlined three "non-exclusive" factors that "typically inform the decision whether to apply the doctrine in a particular case." 532 U.S. at 750. In addition to the two factors primarily relied on in this Circuit and already discussed, the Supreme Court articulated a third, "whether the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*. at 751. In present case, Hall argues that allowing him to pursue his claim against GE would not impose an unfair detriment on GE because GE should have known that they were potentially subject to suit for Hall's injuries. This may be true; however, it is the defendants in the prior suit that may have the right to go after GE and not Hall. Hall has already recovered his damages and been made whole and therefore cannot now come back and attempt to recover, yet again, from another party whose presence in the first suit he insisted was unnecessary.

In conclusion, Hall raises several other points of error. First he claims that the district court failed to require a showing of additional "elements" such as detrimental reliance, privity, and intent. None of these "elements" are required under Fifth Circuit law. *See* **Coastal Plains**, 179 F.3d at 205 (stating judicial estoppel is "intended to protect the judicial system, rather than the litigants"). Second, Hall claims the district court erred by not accepting his defense of "mistake" – that he was wrong in the

17

earlier suit but is now correct. However, even the case Hall cites to support his defense, **New Hampshire v. Maine**, does not allow the defense to be raised when the party had the same opportunity or incentive to determine who was the manufacturer in the first suit as it did in the second and the information necessary to make the determination was no less available in the first suit than it is now. 532 U.S. at 754. Hall has not argued that he now has new information or that he had less incentive to determine the manufacturer in the first suit; in fact, Hall rejected the opportunity to determine if GE was the manufacturer in the first suit. *See* **Coastal Plains**, 179 F.3d at 212-13 (refusing, in a bankruptcy case, to allow a party to avoid judicial estoppel with a claim of "inadvertence" where the party had knowledge and motive to conceal that knowledge in the prior case).

Because Hall's current position is clearly inconsistent with his previous position which he successfully asserted in the previous suit and because he lacks any defense, the district court did not err in finding him judicially estopped. Moreover, it was within the court's discretion to utilize judicial estoppel and prevent Hall from playing "fast and loose" with the court by "changing positions based upon the exigencies of the moment." **Ergo Science**, 73 F.3d at 598.

## CONCLUSION

In conclusion, the district was correct in applying federal

18

law because, when there are no nonfederal interests at stake, judicial estoppel is a matter of federal procedure.  Likewise the court did not abuse its discretion by judicially estopping Hall because the two bases necessary for the doctrine to apply were present and Hall has no defense available.  Therefore, the decision of the district court granting GE's motion for summary judgment is affirmed.  **AFFIRMED.**