SANTANDER CONSUMER USA, INC., Successor in Interest to Drive Financial Services LP, Plaintiff and counter-defendant,

v.

MANHEIM AUTOMOTIVE FINANCIAL SERVICES, INC.; DFW Auto Ranch, Inc.; and Joulani Auto Group, Inc., Defendants and counter-plaintiffs.

No. EP–09–CV–45–PRM.

United States District Court,
W.D. Texas,
El Paso Division.

Sept. 10, 2009.

---

Donald E. Hill, Rowlett Hill LLP, Dallas, TX, Harrel L. Davis, III, Gordon Mott & Davis P.C., El Paso, TX, for Plaintiff and counter-defendant.

Henry J. Paoli, Scott, Hulse, Marshall, Feuille, Finger, Thurmond, John Erich Johnson, Jameson and Dunagan, PC, El Paso, TX, John P. Lewis, Jr., Dallas, TX, for Defendants and counter-plaintiffs.

### ORDER REMANDING CAUSE AND DENYING MOTION TO VACATE

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered Plaintiff Santander Consumer USA, Inc.'s (Santander) "Motion for [sic] Remand," filed on April 21, 2009; Defendant Manheim Automotive Financial Services, Inc.'s (Manheim) "Response in Opposition to Plain-

tiff's Motion to Remand," filed on May 4, 2009; Manheim's "Motion to Vacate Order and Request for Rehearing," filed on May 5, 2009; and Santander's "Response to Defendant's Motion to Vacate Order and Request for Hearing," filed on May 15, 2009, in the above-captioned cause.

After due consideration, the Court is of the opinion that Santander's "Motion for [sic] Remand" should be granted, and that Manheim's "Motion to Vacate Order and Request for Hearing" should be denied as moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Santander, an Illinois corporation with its principal place of business in Dallas, Texas, purchases automobile retail-installment contracts from automobile dealerships in a practice commonly referred to as "indirect lending."[1] Pl.'s First Am. Compl. ¶¶ 4, 9. More specifically, Santander does not solicit retail-lending customers directly, relying instead on the dealership first to sell the car to a retail consumer on credit, and then sell the right to payment under the ensuing credit contract to Santander. *Id.* As a critical component of its indirect-lending business, Santander solicits the dealership's commitment to effectuate a first-priority lien in Santander's favor. *Id.;* *See* Tex. Bus. & Comm.Code Ann. § 9.311(a)(2), (b) (Vernon 2008) (providing that a creditor may generally perfect its security interest in a vehicle only by complying with Tex. Transp. Code Ann. § 501.001 *et seq.*, which in turn requires the creditor to note its security interest on the vehicle's certificate of title).

Prior to July 2008, Santander contracted with Defendant car dealerships Auto Ranch and Joulani Auto to purchase a number of their retail-installment contracts. Pl.'s First Am. Compl. ¶ 11. Both Auto Ranch and Joulani Auto are Texas corporations, with their principal places of business in Arlington, Texas. *Id.* ¶¶ 6–7.

During this same time period, Auto Ranch and Joulani Auto were contractually bound to Defendant Manheim under a "floor-plan financing" agreement. *Id.* ¶ 11. Manheim, a Delaware corporation with its principal place of business in Atlanta, Georgia, regularly provides "floor-plan financing" to several automobile dealerships, including Auto Ranch and Joulani Auto. *Id.* ¶ 10. Essentially, Manheim extends "purchase-money" credit to automobile dealerships, lending them the initial capital needed to acquire an inventory of cars for subsequent retail sale. *Id.* In return, Manheim retains possession of each car's certificate of title as collateral for the floor-plan loan until the vehicle is sold. *Id.* Once the dealership sells the car and reimburses Manheim from the proceeds of that sale, Manheim releases the certificate of title to the dealership for transfer to the retail consumer, with the lien of the "retail lender" (in this case, Santander) noted on the title. *Id.*

On an unspecified date prior to July 2008, Manheim agreed to provide Auto Ranch and Joulani Auto with a new round of floor-plan financing. *Id.* ¶ 11. With the aid of this financing, Auto Ranch added fifteen vehicles to its inventory and Joulani Auto added another five. *Id.* Manheim retained possession of all twenty certificates of title pending repayment. Def. Manheim's First Am. Answer and Countercl. ¶ 28. Meanwhile, both Auto Ranch and Joulani Auto remained contractually

---

**1.** Technically, Santander brings this action as a successor in interest to Drive Financial Services, Inc. (Drive), the corporate entity that actually financed the loans at issue in this case. Pl.'s First Am. Compl. 1. However, for simplicity's sake, the Court will refer to Santander and Drive collectively as "Santander."

obliged to note Santander's security interest on those same certificates of title before transferring them to each of the vehicles' respective purchasers. Pl.'s First Am. Compl. ¶ 12.

In July of 2008, Auto Ranch and Joulani Auto allegedly defaulted on their floor-plan loans, failing to repay Manheim after the two dealerships sold all twenty vehicles to retail consumers. *Id.* In response, Manheim retained possession of the certificates of title for those twenty vehicles and now refuses to release them until Auto Ranch and Joulani Auto cure their defaults. *Id.* As a result, Auto Ranch and Joulani Auto have been unable to note Santander's security interest on the certificates of title.

Consequently, on December 24, 2008, Santander filed suit against Manheim in the 210th District Court for El Paso County, Texas, seeking declaratory judgment as to the priority of its (Santander's) security interest in the twenty vehicles. Pl.'s Orig. Pet., *Santander v. Manheim Auto. Fin. Servs., Inc.,* No.2008–4983 (210th Dist. Ct., El Paso County, Tex. Dec. 24, 2008). On February 9, 2009, Manheim removed the case to federal court on diversity grounds, citing Santander's Texas citizenship and its own Illinois citizenship, and asserting that the amount in controversy exceeded $75,000.00. On March 11, 2009, Santander requested leave to amend its complaint to join Auto Ranch and Joulani Auto as defendants, citing "Defendant Manheim's denial of liability" and judicial economy as dual grounds for such relief. Pl.'s Mot. for Leave to File First Am. Compl. ¶ 1.3. Notably, while Santander acknowledged in its motion for leave that the addition of the two dealerships, both Texas citizens, would destroy complete diversity in the case, it nonetheless contended that it did "not seek leave to file its First Amended Complaint for the sole, or even primary, [sic] purpose of defeating federal court jurisdiction." *Id.* ¶ 1.6. On March 22, 2009, having received no response from Manheim, the Court granted Santander leave to amend its complaint. Text Order Granting Pl.'s Mot. (W.D.Tex. Mar. 22, 2009).

On April 21, 2009, Santander filed the instant motion for remand, arguing that "[r]emand of this case is mandatory given the addition of the two non-diverse defendants." Pl.'s Mot. for Remand ¶ 1.4. In response, Manheim asserts that the Court should deny Santander's motion for remand on the ground that Santander is estopped from requesting such relief because it stated in its initial request for leave to amend that it did not aim to destroy federal jurisdiction.[2] Def.'s Resp. in Opp'n to Pl.'s Mot. for Remand ¶¶ 4–5. Finally, in addition to filing a response to Santander's motion to remand, Manheim also moves the Court to vacate its order originally granting Santander leave to amend, contending that the Court did not afford Manheim adequate response time under the applicable procedural rules prior to granting Santander leave. Def.'s Mot. to Vacate Order ¶¶ 4–10.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Peoples Nat'l Bank v. Office of Comptroller of the Currency of U.S.,* 362 F.3d 333, 336 (5th Cir.2004); *accord Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir.2001), *cert. denied,* 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001). As

---

**2.** Manheim also argued that the issue of remand was not ripe for adjudication because Auto Ranch and Joulani had not been served with process, and thus were not technically parties to the action. However, since Manheim filed its response, Santander has successfully served both dealerships with process and returned the summons executed. *See* Docket Nos. 34, 35 (indicating Santander's return of executed summons as to Auto Ranch and Joulani Auto, respectively). Thus, Manheim's ripeness arguments are moot.

such, federal courts must "presume[ ] that a [suit] lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

■ However, "[i]f at any time before final judgment it appears that the district court lacks subject[-]matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (2006). Typically, the issue of whether the district court lacks subject-matter jurisdiction, and thus "whether an action should be remanded to the state court must be resolved by reference to [the] plaintiff's pleading *at the time of removal*." *Texas v. Alliance Employee Leasing Corp.*, 797 F.Supp. 542, 544 (N.D.Tex.1992) (emphasis added); *accord Doleac v. Michalson*, 264 F.3d 470 (5th Cir.2001) (quoting *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir.1987) ("Generally, jurisdiction is determined at the time suit is filed ... Most post-removal developments—amendment of pleadings to below jurisdictional amount or change in citizenship of a party—will not divest the court of jurisdiction")). However, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject-matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).

■ Further, it is "the district court, sitting without a jury, [that] decides all issues of fact raised by the plaintiff's motion to remand," 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3739, at 468 (3d ed.1998), and in a removal action, it is the removing party that "bear[s] the burden of establishing jurisdiction," *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir.2005). Moreover, the Fifth Circuit has characterized the removing party's burden as a "heavy" one. *See Sid Richardson Carbon & Gasoline Co. v.*

*Interenergy Res.*, 99 F.3d 746, 751 (5th Cir.1996) ("A party invoking the removal jurisdiction of the federal courts bears a *heavy* burden.") (emphasis added).

In short, " '[w]hen specifically contested in a motion to remand, bare allegations by the removing party have been held insufficient to invest a federal court with jurisdiction.' " *H & D Tire & Auto.–Hardware, Inc. v. Pitney Bowes, Inc.*, 250 F.3d 302, 306 n. 7 (5th Cir.2001) (quoting *Asociacion Nacional de Pescadores v. Dow Quimica*, 988 F.2d 559, 566 (5th Cir.1993), *cert denied*, 510 U.S. 1041, 114 S.Ct. 685, 126 L.Ed.2d 653, *abrogated on other grounds, Marathon Oil Co. v. Ruhrgas, A.G.*, 145 F.3d 211, 215 (5th Cir.1998)).

## III.  ANALYSIS

### A.  Santander's motion to remand

#### 1.  The federal removal statute mandates remand in this case

Despite representing to the Court and Manheim that it was not strategically amending its complaint to evade federal jurisdiction, Santander now asserts that "[r]emand of this case is mandatory given the addition of the two non-diverse Defendants." Pl.'s Mot. for [sic] Remand ¶ 1.4. Regardless of the apparent inconsistencies in Santander's pleadings, Fifth Circuit precedent construing the federal removal statute compels the Court to remand this case.

The Fifth Circuit espouses the general rule that "most post-removal developments ... will not divest the court of jurisdiction[,] but an addition of a nondiverse defendant will do so." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir.1987). Section 1447(e) of Title 28 of the United States Code articulates a district court's options when considering a plaintiff's request for post-removal joinder of non-di-

verse defendants. Section 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject[ ]matter jurisdiction, the [C]ourt may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). The Fifth Circuit interprets this provision literally, and has observed that "[b]y expressly giving a district court only two options, this section indicates that the court may not permit joinder of non-diverse defendants but then decline to remand." *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir.1999).

■ Thus, when the Court permitted Santander to join two non-diverse defendants post-removal, it destroyed its own diversity jurisdiction. Accordingly, under the Fifth Circuit's precedent, the Court has no choice but to remand the case to Texas state court.

### 2. The doctrine of judicial estoppel is inapplicable

■ In response to Santander's motion, Manheim argues that Santander is now judicially estopped from requesting remand because it initially stated in its motion for leave that it was not amending its complaint for the purpose of destroying the Court's jurisdiction. Def.'s Mot. to Vacate Order ¶¶ 4–10. However, judicial estoppel does not apply in the present context where the court's subject-matter jurisdiction is at stake. As the Fifth Circuit has noted, "[j]udicial estoppel is an equitable doctrine that 'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or earlier proceeding.'" *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 347 (5th Cir.2008) (quoting *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir.2003)). Judicial estoppel doctrine serves the purpose of "'protect [ing] the essential integrity of

the judicial process' by reducing the 'risk of inconsistent court determinations.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)).

However, like many of its sister circuits, the Fifth Circuit is "especially wary of applying judicial estoppel to create subject [-]matter jurisdiction in federal courts," *Lara v. Trominski*, 216 F.3d 487, 495 n. 9 (5th Cir.2000) (citing *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 14 (1st Cir.1999)), and has concluded that "judicial estoppel principles cannot conclusively establish jurisdictional facts," *In re Southwestern Bell Tel. Co.*, 535 F.2d 859, 861 (5th Cir.1976), *aff'd en banc* 542 F.2d 297 (5th Cir.1976), *vacated on other grounds*, 556 F.2d 370 (5th Cir.1977). *Accord Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC*, 232 F.3d 79, 82 (2d Cir.2000) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("[W]e note that 'principles of estoppel do not apply' to questions of subject[-]matter jurisdiction.")).

Thus, "[i]rrespective of how the parties conduct their case, the courts have an independent obligation to ensure that federal jurisdiction is not extended beyond its proper limits." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir.2000). Accordingly, judicial estoppel does not compel the Court to refrain from remanding this case.

### B. The Court lacks jurisdiction to vacate its order granting leave to amend

In addition to opposing Santander's motion to remand, Manheim also moves the Court to vacate its original order granting Santander leave to amend, arguing that the Court did not afford Manheim adequate time to respond to Santander's pro-

posed joinder of Auto Ranch and Joulani Auto. Def.'s Mot. to Vacate Order ¶ 8.

Manheim contends that by granting Santander's motion for leave to amend only eleven days after it was filed, the Court ruled prematurely, failing to properly afford Manheim an additional three days to respond under applicable procedural rules. *Id.* ¶¶ 4–9. Specifically, because Santander served its motion for leave to amend on Manheim *electronically,* Manheim correctly notes that FED.R.CIV.P. 6(d)'s "mailbox rule" extends the eleven-day response time by three extra days. *Id.* ¶¶ 4–6; *See* FED. R. CIV. P. 6(d) (2009) (adding three extra days to any of the Federal or Local Rules' responsive deadlines when the motion being responded to was served by means other than hand delivery). Accordingly, Manheim argues, but for the Court's premature ruling, Manheim would have opposed Santander's motion for leave on fraudulent joinder grounds. *Id.*

▮ As an initial matter, the Court notes that the grant or denial of the opportunity to amend is within the sole discretion of the District Court, and further, that the Federal Rules advise the Court to "freely give leave when justice so requires." *Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242, 246 (5th Cir.1997) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); FED. R. CIV. P. 15(a) (2009)). Furthermore however, Manheim's motion to vacate requests relief that the Court now lacks jurisdiction to grant. Essentially, Manheim moves the Court to invoke the fraudulent joinder doctrine in its case, and assert diversity jurisdiction on the ground that Auto Ranch and Joulani Auto have been fraudulently joined to the action. Nevertheless, the Fifth Circuit has remained steadfast in its position that "[t]he fraudulent joinder doctrine does not apply to joinders that occur *after* an action is removed." *Cobb,* 186 F.3d at 677.

While Manheim correctly observes that the Fifth Circuit's stated rationale for this rule is that defendants joined post-removal "have a chance to argue against joinder before the [C]ourt grants leave to amend," Def.'s Mot. to Vacate Order ¶ 12 (quoting *Cobb,* 186 F.3d at 678), that the Court prematurely granted joinder does not change the fact that joinder was granted, and federal jurisdiction destroyed, *see Cobb,* 186 F.3d at 678 ("Indeed, once it permitted joinder of the non-diverse defendants, the [C]ourt lost subject[-]matter jurisdiction and thus ha[s] no power even to consider whether fraudulent joinder applied."). For this very reason, the Fifth Circuit in *Cobb* explicitly left open the question of whether the district court granting post-removal joinder in that case "could have exercised its inherent power to recall its judgment and withdraw its order permitting joinder." *Cobb,* 186 F.3d at 678 n. 8.

Thus, in the absence of guidance from the Fifth Circuit, the Court hesitates to assert jurisdiction that it no longer possesses and vacate its prior order granting leave to amend, notwithstanding the possibility that Santander's contradictory pleadings were by self-serving design.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that remand of this case is mandatory. When the Court granted Santander leave to amend its complaint to join two non-diverse defendants, diversity jurisdiction was instantly destroyed, and remand is now compulsory. Finally, the Court lacks jurisdiction to vacate its order granting Santander leave.

Accordingly, **IT IS ORDERED** that Plaintiff Santander Consumer USA, Inc.'s "Motion for [sic] Remand" (Docket No. 14) is **GRANTED.**

IT IS FURTHER ORDERED that Defendant Manheim Automotive Financial Services, Inc.'s "Motion to Vacate Order and Request for Hearing" (Docket No. 18) is **DENIED.**

IT IS FURTHER ORDERED that the above-captioned cause is **REMANDED** to the 210th District Court for El Paso County, Texas.

IT IS FURTHER ORDERED that all pending motions, if any, filed in the above-captioned cause be **DENIED AS MOOT.**

IT IS FINALLY ORDERED that the **CLERK** shall **CLOSE** the case.