# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-31174

United States Court of Appeals
Fifth Circuit

**FILED**
January 4, 2018

Lyle W. Cayce
Clerk

EARL E. OWENS; JOSEPH WAYNE ESPAT,

Plaintiffs - Appellants

v.

WESTERN & SOUTHERN LIFE INSURANCE COMPANY; WESTERN & SOUTHERN LIFE INSURANCE LONG TERM INCENTIVE & RETENTION PLAN,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CV-4782

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

Plaintiffs–Appellants Earl Owens and Joseph Espat sued Defendants–Appellees Western & Southern Life Insurance Company and Western & Southern Life Insurance Long Term Incentive and Retention Plan for payment of benefits under a retirement plan in which Owens and Espat participated. Both sides filed motions for summary judgment. The district court granted

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-31174

summary judgment in favor of the defendants. As Owens and Espat violated the forfeiture provision of the retirement plan, they are not entitled to the plan's post-retirement benefits. Accordingly, we AFFIRM.

## I.

Earl Owens and Joseph Espat are retired former employees of Western & Southern Life Insurance Company ("Western & Southern"). Western & Southern sells life and health insurance in addition to providing other financial investment products and services. Both Owens and Espat participated in a retirement plan with Western & Southern—the Western & Southern Agency Group Long Term Incentive and Retirement Plan (the "Plan"). According to its purpose statement, the Plan was "designed to provide an incentive for selected key field associates . . . to maximize performance and remain with the organization and . . . to attract well-qualified candidates." To be eligible to participate in the Plan, an employee must be "in the top 5% of Employees when ranked by annual Compensation as measured during the previous calendar year." Owens became eligible to participate in the Plan in 2006 and retired in 2010; Espat became eligible in 2008 and retired in 2012. Both began receiving payments after they retired.

The Plan has a forfeiture provision, which states in relevant part:

4.7 <u>Forfeitures.</u> The contingent right of Participant or Beneficiary to receive future payments hereunder with respect to both vested and nonvested Performance Units shall be forfeited upon the occurrence of any one or more of the following events:

. . .

(b) If the Participant within three years after termination of employment with the Company or any Affiliate (1) enters into a business or employment which is competitive with the business of the Company or any Affiliate, (2) solicits the Company's or any Affiliates' employees, agents or clients to work for or buy products from, or (3) acts in any other way which, had the Participant been employed with the Company or any Affiliate, would have provided

2

## No. 16-31174

the Company with "Cause"[1] to terminate such Participant's employment.

Western & Southern had a policy that employees would be subject to termination if they were appointed to sell policies for another insurance company.

After Owens and Espat retired from Western & Southern, they became licensed by other life insurance companies and began selling policies for these other companies. Western & Southern sent letters to Owens and Espat in November and December 2012, respectively. These letters stated that Western & Southern had discovered that Owens and Espat were appointed by other insurance companies and that they had forfeited their rights under the Plan by "enter[ing] into a business relationship or employment with" these other companies within three years of retirement. The letters incorporated a demand for repayment of already paid benefits under the Plan. Neither Owens nor Espat responded to the letters.

Subsequently, in March 2013, Western & Southern sued Owens in Ohio state court to recoup the already paid benefits under state law theories of recovery. The following month, the lower court dismissed the action for lack of jurisdiction, finding that Western & Southern's claims arose under an Employee Retirement Income Security Act ("ERISA") plan and were preempted by 29 U.S.C. § 1144. Western & Southern appealed, and the appeals court affirmed the lower court's decision. In its opinion, the appeals court noted that "[b]oth parties agree that [the Plan] is a top hat employee benefit plan as defined under ERISA."

---

[1] "Cause" is defined in the Plan to include "the failure of an Employee, for reasons other than disability or incapacity, to perform his duties faithfully, competently, and in accordance with the standards determined by the Company for the position and title which he holds," as well as "other conduct by the Employee which is demonstrably and materially injurious to the Company or any Affiliate, monetarily or otherwise."

No. 16-31174

While the state court action was pending, Owens and Espat initiated this action against Western & Southern in June 2013, seeking payment of benefits under the Plan. Both sides filed motions for summary judgment. The district court then stayed this action, pending the resolution of the state court appeal. The district court stated that one of the issues on appeal was whether the Plan is a top hat plan and that the implications from the resolution of that issue would affect the district court's decision related to the motions for summary judgment. After the state court appeal ended, the district court reopened this action and reconsidered the motions for summary judgment. In their motion, the defendants had argued that Owens and Espat did not exhaust their administrative remedies under the Plan. The district court agreed and therefore remanded the case to the plan administrator. In its order, the district court acknowledged the state appeals court's statement that both parties agreed that the Plan is top hat.

While waiting for Owens and Espat to pursue the administrative process, the district court again stayed this action. Eventually, the plan administrator denied Owens and Espat's claim for benefits. It concluded that they violated the forfeiture provision of the Plan by engaging in "business affiliations with organizations competitive with" Western & Southern and participating in activity that if done while employed would have been "Cause" for termination. The district court again reopened this action, and the parties again cross-motioned for summary judgment. The district court granted the defendants' motion for summary judgment and denied Owens and Espat's. It held that the plan administrator did not abuse its discretion in denying the benefits because the conditions for forfeiture had been met. Owens and Espat then filed a motion for reconsideration, which the district court denied. Subsequently, they timely appealed.

4

No. 16-31174

## II.

## A.

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. *See Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1026 (5th Cir. 2015). Where, as here, the language of the ERISA plan "grants the plan administrator discretionary authority to interpret the plan and determine eligibility for benefits, the plan administrator's denial of benefits is reviewed for an abuse of discretion."[2] *Id.* (quoting *Cooper v. Hewlett– Packard Co.*, 592 F.3d 645, 651–52 (5th Cir. 2009)). In order to avoid reversal, the plan administrator's decision "must be supported by substantial evidence in the administrative record." *Id.* (quoting *High v. E–Systems Inc.*, 459 F.3d 573, 576 (5th Cir. 2006)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Cooper*, 592 F.3d at 652). The plan administrator's determination should fall "somewhere on a continuum of reasonableness—even if on the low end." *Id.* (quoting *Corry v. Liberty Life Assurance Co. of Bos.*, 499 F.3d 389, 398 (5th Cir. 2007)). As the payer of benefits is the plan administrator in this case, we consider this conflict of interest as "one factor among many" in determining whether there has been an abuse of discretion. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247– 48 (5th Cir. 2009).

In evaluating whether the plan administrator abused its discretion in denying the claim for benefits, we engage in a two-step analysis. *See Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 227 (5th Cir. 2004). First, we determine whether the plan administrator gave a legally correct interpretation

---

[2] The Plan states that the administrator "shall have the discretionary authority to determine eligibility for benefits and to construe the terms of the Plan."

of the plan. *See Pickrom v. Belger Cartage Serv., Inc.*, 57 F.3d 468, 471 (5th Cir. 1995). Determining the legally correct interpretation entails examining (1) whether the administrator has given the plan a uniform construction, (2) whether the administrator's interpretation is fair and reasonable, and (3) whether different interpretations of the plan will result in unanticipated costs. *See id.* Here, as the Appellants do not claim that the interpretation of the Plan was not uniform or that there were unanticipated costs, the only inquiry at hand is whether the construction of the Plan is fair and reasonable. *See Vercher*, 379 F.3d at 228. If the plan administrator's interpretation is legally correct, then no abuse of discretion has occurred, and the analysis ends. *See id.* at 227. However, if we decide that the interpretation is not legally sound, we then move on to step two and determine whether the interpretation itself constitutes an abuse of discretion. *See id.* at 227–28.

Owens and Espat contest whether their actions violated § 4.7(b)(1) of the forfeiture provision. Section 4.7(b)(1) provides that a participant forfeits his benefits if he "within three years after termination of employment . . . enters into a business or employment which is competitive with the business of the Company or any Affiliate." The Appellants argue that they did not violate this clause because they were not employees, but instead independent agents. They also argue that the work they did was not "competitive with" Western & Southern's business because they did not sell the same insurance policies or target the same buyers. Their contentions are unpersuasive. An "employee" can be defined as a "person who works for another in return for financial or other compensation." *Employee*, The American Heritage Dictionary (4th ed. 2000). Employment can be competitive if the goods or services sold by one company are in the same market as those sold by another; they need not be the exact goods or services or be sold to identical consumers. *See Competition*, The American Heritage Dictionary (4th ed. 2000) (defining competition as "[r]ivalry

between two or more businesses striving for the same . . . market"). Thus, it is fair and reasonable to interpret becoming appointed with another life insurance company and getting compensated to sell that company's policies as "employment which is competitive with" Western & Southern's business of selling life insurance policies.

Owens and Espat undisputedly became appointed to sell and in fact sold policies for other life insurance companies within three years of their retirement from Western & Southern. Therefore, they violated § 4.7(b)(1) by engaging in employment competitive with Western & Southern's business. Even assuming arguendo that the Appellants did not violate § 4.7(b)(1), their actions still satisfied the conditions for forfeiture by violating § 4.7(b)(3). Section 4.7(b)(3) provides that a participant forfeits his benefits if he "within three years after termination of employment . . . acts in any other way which, had the Participant been employed with the Company or any Affiliate, would have provided the Company with 'Cause' to terminate such Participant's employment." Western & Southern had a policy that employees would be subject to termination if they became appointed by another insurance company. Owens and Espat undisputedly knew this policy and became appointed to sell policies for other life insurance companies within three years of their retirement from Western & Southern. Thus, they violated § 4.7(b)(3) and forfeited their benefits. Accordingly, the plan administrator did not abuse its discretion in denying Owen and Espat's claim for benefits.

## B.

Next, the Appellants contend that the Plan is not top hat and therefore ordinary ERISA disclosure requirements apply. They claim that Western & Southern violated such requirements by not providing them with a summary plan description containing the forfeiture provision, which in turn renders the

provision unenforceable. We agree with the district court's conclusion that the Appellants are judicially estopped from making this argument.

We review a district court's invocation of judicial estoppel for an abuse of discretion. *Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 553 (5th Cir. 2014) (citing *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)). "Judicial estoppel is an equitable doctrine that defies 'inflexible prerequisites or an exhaustive formula.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)). This doctrine "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Id.* (quoting *Ergo Sci., Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996)). This doctrine "prevent[s] litigants from playing fast and loose with the courts," *id.* (quoting *Hall*, 327 F.3d at 396), and protects "the integrity of the judicial process," *id.* (quoting *United States ex rel. Am. Bank v. C.I.T. Constr. Inc. of Tex.*, 944 F.2d 253, 258 (5th Cir. 1991)). Two elements are necessary for judicial estoppel: (1) the estopped party's position must be "clearly inconsistent with its previous one," and (2) "that party must have convinced the court to accept that previous position." *Id.* (quoting *Hall*, 327 F.3d at 396). But we need not consider these two elements exclusively. Other factors such as inadvertence or mistake may provide a reason not to apply judicial estoppel. *See New Hampshire*, 532 U.S. at 753; *Hall*, 327 F.3d at 399–400; *see also Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (collecting cases).

Judicial estoppel applies in this case. The two principal elements are found here. First, Owens and Espat represented to the district court in this action that the Plan is top hat at least four times.[3] Their representations

---

[3] Owens and Espat recognized the top hat nature of the Plan in the following pleadings: (1) their November 26, 2013, Memorandum in Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss, (2) their September 8, 2014, Memorandum in Support of the

conflict with their later claim in their June 2016 motion for summary judgment that the Plan is not top hat. Second, their representations were adopted in the order remanding the case to the plan administrator when the district court accepted the state appeals court's statement that the Plan is top hat. *See Hall*, 327 F.3d at 398 ("[A]cceptance of a party's argument could be 'either as a preliminary matter or as part of a final disposition.'" (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999))).

Owens and Espat argue that their representations were inadvertent. We find their contention unpersuasive. First, there were several representations that the Plan is top hat. Second, the first representation to the district court was in November 2013—about two-and-a-half years prior to the June 2016 motion for summary judgment. During this time, the Appellants had the opportunity and incentive to contend that the Plan is not top hat, but they did not. *Cf. id.* at 399 (rejecting the estopped party's defense of mistake because the estopped party had the "opportunity or incentive" to discover the information upon which he based his second position at the time he adopted his first position). For example, Owens and Espat did not raise this argument in their first summary judgment motion in November 2014. Further, the Appellants did not raise this contention in the proceeding before the plan administrator. Permitting them to evade judicial estoppel now would give them a strategic benefit and incentivize parties to play "fast and loose." *See id.* at 396. In this case, the equities are in favor of the defendants. Accordingly, under our deferential abuse of discretion standard, the district court did not err by invoking judicial estoppel.

---

Motion to Compel Production of Documents, (3) their September 30, 2014, Memorandum in Opposition to the Motion for Leave to file a Counterclaim, and (4) their October 2, 2014, Supplemental Memorandum in Support of the Motion to Compel Discovery.

No. 16-31174

## C.

Finally, the Appellants contend that even if the Plan is top hat, the forfeiture provision is unenforceable. They argue that top hat plans are still subject to ERISA's ordinary disclosure requirements with which Western & Southern failed to comply. Alternatively, they argue that if top hat plans are exempt from such requirements and subject only to a minimal filing requirement, Western & Southern did not meet the latter requirement.[4] Their contentions are meritless.

A top hat plan is an ERISA plan "which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1). ERISA's regulation of top hat plans is more relaxed because of Congress's view that "high-echelon employees, unlike their rank-and-file counterparts, are capable of protecting their own pension interests." *Alexander v. Brigham & Women's Physicians Org., Inc.*, 513 F.3d 37, 43 (1st Cir. 2008). ERISA expressly exempts top hat plans from its participation and vesting provisions (29 U.S.C. §§ 1051–61), its funding provisions (29 U.S.C. §§ 1081–86), and its fiduciary responsibility provisions (29 U.S.C. §§ 1101–14). *See Reliable Home Health Care, Inc. v. Union Cent. Ins. Co.*, 295 F.3d 505, 512 (5th Cir. 2002); *accord Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 287 (2d Cir. 2000). Although top hat plans are not exempt from ERISA's reporting and disclosure requirements, *see Reliable*, 295 F.3d at 515—which

---

[4] The Appellants contend in their reply brief that Western & Southern had a fiduciary duty to disclose material information. Their argument is forfeited as they did not raise it in their opening brief. *See, e.g.*, *United States v. Magana*, 837 F.3d 457, 459 n.1 (5th Cir. 2016). The Appellants also contend that under general principles of contract law, Western & Southern's failure to give notice of the forfeiture clause renders the clause unenforceable. They also forfeited this argument as they did not raise it to the district court. *See, e.g.*, *In re Deepwater Horizon*, 814 F.3d 748, 752 (5th Cir. 2016) (per curiam).

include the provision of a summary plan description[5] and annual reports to the beneficiaries of the plan, *see* 29 U.S.C. § 1024(b)—the Secretary of Labor is authorized by 29 U.S.C. § 1030 to promulgate regulations that prescribe alternative methods for satisfying these requirements, *see Demery*, 216 F.3d at 290.

One such regulation, 29 C.F.R. § 2520.104-23(b), allows a top hat plan to be deemed to satisfy ERISA's reporting and disclosure requirements if the plan administrator files a short statement with the Secretary of Labor and provides plan documents to the Secretary upon request. *See Demery*, 216 F.3d at 290. The short statement must include:

> the name and address of the employer, the employer identification number (EIN) assigned by the Internal Revenue Service, a declaration that the employer maintains a plan or plans primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees, and a statement of the number of such plans and the number of employees in each.

29 C.F.R. § 2520.104-23(b)(1). This statement must be filed within 120 days of the plan becoming subject to ERISA. *Id.* § 2520.104-23(b)(2).

Western & Southern has met the requirements of 29 C.F.R. § 2520.104-23(b) and has therefore satisfied the ERISA reporting and disclosure requirements. The Plan was formed in 2006, and Western & Southern filed a short statement that complied with the requirements of 29 C.F.R. § 2520.104-23(b)(1) on April 21, 2006.[6]

---

[5] According to Western & Southern, its practice was to provide a summary plan description, which includes the grounds for forfeiture, to employees when they became eligible for the Plan. Owens and Espat claim that they never received a copy of this description until after litigation commenced. As a summary plan description is not required for top hat plans, this factual dispute is not dispositive.

[6] Western & Southern also submitted an updated short statement that complied with the requirements of 29 C.F.R. § 2520.104-23(b)(1) on October 11, 2012.

No. 16-31174

## III.

For the foregoing reasons, the district court's grant of summary judgment in favor of the defendants is AFFIRMED.