# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 21, 2014

Lyle W. Cayce
Clerk

No. 13-30739

STEPHEN MARSHALL GABARICK, on behalf of himself and all others similarly situated; ET AL,

Plaintiffs

v.

LAURIN MARITIME (AMERICA) INCORPORATED; ET AL,

Defendants

---

AMERICAN COMMERCIAL LINES, L.L.C.,

Plaintiff-Appellant

v.

D.R.D. TOWING COMPANY, L.L.C.,

Defendant-Appellee

UNITED STATES OF AMERICA,

Intervenor-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, GARZA, and HIGGINSON, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

No. 13-30739

American Commercial Lines ("ACL") sought a declaratory judgment that certain vessel chartering agreements with D.R.D. Towing Company, LLC ("DRD") were void *ab initio*. The district court dismissed the action pursuant to the equitable doctrine of judicial estoppel. It found that ACL's position in the declaratory judgment action—that the charters were void *ab initio*—clearly contradicted its earlier position in a related proceeding that the charters were valid, which had been accepted by the district court. ACL appeals from the district court's dismissal and seeks remand with instructions to declare the charters void *ab initio*.

## I

ACL is a marine transportation enterprise that operates a fleet of barges and tugboats. ACL contracted with DRD to operate some of its tugs, including the MEL OLIVER.[1] This contractual relationship was created and governed by two charter agreements. Under the "Bareboat Charter," ACL chartered its tugboat to DRD at the rate of $1 per day. Then, under the "Fully Found Charter," DRD agreed to crew the tug and charter its services to ACL.

In the early morning of July 23, 2008, the MEL OLIVER was pushing an ACL barge, loaded with fuel oil, along the Mississippi River near the City of New Orleans. The DRD steersman operating the tug was unlicensed, in violation of Coast Guard regulations. As it moved towards its destination, the MEL OLIVER veered off course and collided with the tanker M/V TINTOMARA. The force of the impact separated the tug from the barge, which floated downriver and sank upstream of the Crescent City Connection Bridge. Three hundred thousand gallons of fuel oil were discharged into the Mississippi.

---

[1] An amendment to the initial charter substituted the MEL OLIVER for the PAM D, the vessel originally listed in the agreement.

2

No. 13-30739

Several lawsuits followed.  The United States brought an action against ACL under the Oil Pollution Act, 33 U.S.C. § 2701, *et seq.*  DRD pleaded guilty to criminal charges for its role in the collision.  ACL, DRD, and entities with interests in the M/V TINTOMARA ("the TINTOMARA interests") each filed interpleader actions to limit, or preclude, their liability arising out of the collision under general maritime law. These limitations actions were consolidated and tried together ("the limitations action"). Lastly, ACL filed the instant declaratory judgment action to have the charter agreements with DRD declared void *ab initio*. Relying on DRD's admissions in its criminal guilty plea, ACL sought to prove that DRD entered into the charters with the intent to violate their terms, thereby perpetrating fraud in the inducement.

Initially, the declaratory judgment action and the limitations action proceeded in parallel. The district court denied ACL's motion for partial summary judgment in the declaratory judgment action, finding a dispute of material fact concerning DRD's intent to deceive ACL when forming the charters. Then, over ACL's objection, the district court granted two motions: it consolidated the declaratory judgment action into the limitations action, and it stayed the declaratory judgment action pending resolution of the limitations action.  The stay order was entered pursuant to 28 U.S.C. § 2361, which permits a federal court to stay actions in state and federal courts during the pendency of a related interpleader. The district court's stay order stated that "the declaratory judgment action should be stayed pending resolution of the instant action."

The limitations action was tried to the bench. Among the arguments offered to the court, ACL asserted that, pursuant to the valid charters, DRD was the owner *pro hac vice* of the MEL OLIVER. The district court accepted this argument, finding that fault for the collision lay solely with DRD, *in personam*, and with the MEL OLIVER, under DRD's control, *in rem*.

3

No. 13-30739

Following judgment in the limitations action, with the parties' consent, the district court proceeded to try the declaratory judgment action on the bench trial record from the limitations action. The court then granted the United States permissive intervention, as its interests in the Oil Pollution Act suit could be affected by a declaration that the charters were void *ab initio*.[2] After further briefing, in which the United States urged judicial estoppel, the district court dismissed the declaratory judgment action with prejudice, determining that "ACL's complaint seeking declaratory judgment to void the charters between itself and DRD is barred by judicial estoppel." The court determined that it could not declare the charters void *ab initio* because it had "already accepted ACL's argument that valid bareboat charters existed . . . ." ACL appeals from the dismissal, and from the district court's earlier denial of partial summary judgment.

## II

We review a district court's decision to invoke judicial estoppel for abuse of discretion. *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003). "A trial court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Caldwell*, 586 F.3d 338, 341 (5th Cir. 2009).

## A

Judicial estoppel is an equitable doctrine that defies "inflexible prerequisites or an exhaustive formula." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001). The doctrine "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or

---

[2] In seeking to void the charters, ACL's apparent objective is to defeat the United States' ability to recover from ACL under the Oil Pollution Act, believing that such recovery is only possible if ACL was in contractual privity with DRD.

DRD filed for bankruptcy and did not oppose ACL in the declaratory judgment action. Nor has DRD submitted briefing in this appeal.

4

some earlier proceeding." *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996); *see also New Hampshire*, 532 U.S. at 749 ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.") (quoting 18 Moore's Federal Practice § 134.30, p. 134–62 (3d ed. 2000)). One of the doctrine's purposes is "to prevent litigants from playing fast and loose with the courts." *Hall*, 327 F.3d at 396. And, ultimately, judicial estoppel protects "the integrity of the judicial process." *United States ex rel. American Bank v. C.I.T. Constr. Inc. of Texas,* 944 F.2d 253, 258 (5th Cir. 1991). In this circuit, at least two requirements must be met before a party's argument may be judicially estopped. *Id.* First, the estopped party's position must be "clearly inconsistent with its previous one," and second, "that party must have convinced the court to accept that previous position." *Hall*, 327 F.3d at 396.[3]

## B

In the limitations action, ACL claimed that the charter agreements made DRD the owner *pro hac vice* of the MEL OLIVER. The validity of the charters is a necessary predicate to this claim. The district court adopted ACL's position

---

[3] ACL asserts that there are three requirements for judicial estoppel applicable in this case, relying on our precedent in *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004). The purported third element is that "the non-disclosure must not have been inadvertent." *Id.* This element is not applicable in the instant case; we apply it only when the judicial estoppel is based on the non-disclosure of a claim in a prior bankruptcy proceeding. ACL has not directed us to any non-bankruptcy case that applied this factor. *Superior Crewboats* is a bankruptcy case. And, indeed, this requirement does not logically apply outside of the bankruptcy code's disclosure procedures—the requirement necessarily presumes that a "non-disclosure" has occurred, and it is concerned with the party's intent behind the non-disclosure. In *New Hampshire v. Maine*, the Supreme Court did indicate that judicial estoppel might be inappropriate "when a party's prior position was based on inadvertence or mistake." *New Hampshire*, 532 U.S. at 753. However, the facts of *New Hampshire* and this case are distinct. In *New Hampshire*, inadvertence is addressed in conjunction with the Court's analysis of whether New Hampshire fully understood the significance of its previous position as to its border with Maine. Here, there is no question that ACL understood the significance of asserting that the charter agreements were, or were not, valid.

in deciding that DRD was solely liable for the collision. After lift of the stay order in the declaratory judgment action, ACL then asserted that the charters were void *ab initio*—that is, they never came into existence because of DRD's alleged fraud in the inducement. These two positions are clearly inconsistent, and, moreover, the district court adopted the first position in its judgment resolving the limitations action. *See Hall*, 327 F.3d at 396.

Here, ACL argues that its two positions are not inconsistent, claiming that, in the limitations actions, it only posited the "agreements were *intended* to be valid charters." Simultaneously, ACL asserts that the district court's actual holding in the limitations action was that "there was no act or omission of ACL which caused or contributed to the collision"—not that the charters were actually valid instruments. Under ACL's reasoning, the district court's judgment in the limitations actions established that ACL "intended" and "expected" that the charters would be valid, not that they were actually binding. Accordingly, under ACL's view, there is no inconsistency between its positions.

ACL's characterizations of its previous argument and the district court's holding are unavailing. In the limitations actions, ACL did not argue that the charters were merely "intended" to be valid. Rather, it actively opposed the TINTOMARA interests' position that the charters were "crewing agreements," which did not render DRD owner *pro hac vice* of the tug. ACL asserted that "there is no evidence that [the charters] were anything other than what they purported to be, *valid and customary charters*." Most significantly, throughout the limitations action, ACL argued the position that, pursuant to the charters, "DRD became owner *pro hac vice*" of the MEL OLIVER. This legal fiction of general maritime law is only tenable if the charters were in fact valid agreements. Accordingly, we reject ACL's claim that its positions in the two actions are not inconsistent. Similarly, we reject ACL's assertion that the

district court did not accept its position in the limitations action. The district court's judgment establishes that it found "there was a valid bareboat charter that invested DRD with ownership *pro hac vice* along with a valid time charter that recognized DRD's status as 'owner' vis-à-vis ACL's charter position in the latter charter." It is clear that the validity of the charters was central to the district court's judgment.

Next, ACL contends that its positions in the limitations action and the declaratory judgment action are not inconsistent because, in the limitations action, its position that the charters were valid was one of several alternative arguments. In addition to arguing the charters were valid, ACL also asserted the affirmative defense that the charters were void *ab initio*. Under this theory of the case, ACL claimed that there was no agreement between ACL and DRD for use of the tug, which DRD possessed illegally.  It is true that alternative arguments are widely permitted, even if they are inconsistent. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). But, in the context of judicial estoppel, the fact that a party's previous position was an alternative argument is not determinative. The second prong of our judicial estoppel analysis requires that the party "must have convinced the court to accept that previous position." *Hall*, 327 F.3d at 396.  This makes all the difference. Once a court has accepted and relied upon one of a party's several alternative positions, any argument inconsistent with that position may be subject to judicial estoppel in subsequent proceedings.

We take guidance from *New Hampshire v. Maine*, in which the Supreme Court estopped New Hampshire from making an argument about its maritime border with Maine that had been one of New Hampshire's alternative arguments in a previous proceeding. In the previous proceeding, litigated in the Supreme Court during the 1970's, "New Hampshire offered two

interpretations" of its border with Maine based upon language from King George II's 1740 decree fixing the boundary at the "Middle of the River." *New Hampshire*, 532 U.S. at 751–52. First, in the terms of a proposed consent decree, New Hampshire claimed that the "Middle of the River" was the center of the river's main navigable channel. *Id.* at 751. Second, New Hampshire asserted that the charter referred to the geographic middle of the river. *Id.* Ultimately, the 1970's dispute was resolved by the consent decree. The Court "accepted New Hampshire's agreement with Maine" that the charter indicated the center of the navigable channel—accepting one of the State's two alternative arguments. In the subsequent proceeding in 2001, the Court applied judicial estoppel notwithstanding the fact that New Hampshire had taken alternate positions in the 1970's proceeding. The relevant focus was that the "record of the 1970's dispute makes clear that this Court accepted New Hampshire's [position]." *Id.* at 752.

Lastly, ACL asserts that there is no inconsistency because its argument in the limitations action, that the charters were valid, "leads to the same result as ACL's position" in the declaratory judgment action. Certainly, ACL might obtain similar results with inconsistent arguments in these two cases— avoiding liability for the collision and liability for clean up costs. But judicial estoppel is not controlled by consistency of a party's desired objectives. The doctrine focuses on the consistency of a party's arguments as accepted by the court, and seeks to "prevent[] internal inconsistency." *Ergo Science, Inc., v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996).

## C

Next, ACL contends that judicial estoppel is inapplicable because the district court's order staying the declaratory judgment action prevented it from arguing that the charters were void *ab initio*. ACL asserts that "[i]t is merely trying to make the arguments that were stayed during the trial" of the

No. 13-30739

limitations action, and that it "never had the opportunity to address the other defense that the charters were void *ab initio.*"  In ACL's view, the district court's stay order obliged it to argue that the charters were valid in the limitations action, and, accordingly, applying judicial estoppel would be inequitable.

Judicial estoppel is not permitted "if it was the court, not the party, that instigated the first position that the party later chose to abandon."[4] In *Zedner v. United States*, 547 U.S. 489, 503 (2006), a criminal defendant signed the District Court's waiver form purporting to prospectively waive his rights under the Speedy Trial Act to secure a continuance. In a subsequent appeal, the defendant argued that prospective waivers are invalid. The government asserted a judicial estoppel defense because "petitioner's [prospective] express waiver induced the district court to grant a continuance . . . ." *Id*. The Court refused to apply judicial estoppel, in part, because, "it was the District Court that requested the waiver and produced the form for petitioner to sign." *Id*. at 505. In fact, the District Court's prospective waiver form was "apparently of its own devising." *Id*. at 494. Thus, the Court found that the "[p]etitioner did not succeed in persuading the District Court to accept the proposition that prospective waivers of the Speedy Trial Act are valid," the position later contradicted. *Id*. at 505 (alterations and internal quotations omitted). *Zedner* establishes that judicial estoppel is inapplicable when the court requires the party to adopt the position it later seeks to contradict.

Here, the district court's stay order did not require ACL to adopt the position that the charters were valid. Unlike the waiver form in *Zedner*, which

---

[4] 18B CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE, JURISDICTION § 4477 (2d ed. 2014).

No. 13-30739

articulated a particular position, the instant stay order only delayed resolution of the declaratory judgment action until the limitations actions concluded.

The stay issued pursuant to 28 U.S.C. § 2361, which permits a federal court to stay pending actions when exercising jurisdiction over an interpleader action. The statute provides that "a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting *any proceeding* in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court." 28 U.S.C. § 2361 (emphasis added). This statute only permits a court to restrain "a proceeding", it provides no authority to control the course of other proceedings, or to require a party to take certain positions in other proceedings.[5] Under this authority, the district court's stay order provided simply that "the declaratory judgment action should be stayed pending resolution of the instant action." Nothing in the text of this order restricts the scope of ACL's potential arguments in the limitations action. While the order stayed the declaratory judgment action, in which ACL sought to have the charters declared void *ab initio*, it did not prevent that argument from being raised in the limitations action, nor did it compel the argument that the charters were valid.

In addition to the limited statutory authority and the particular language of the district court's stay order, ACL's claim that the stay prevented

---

[5] Similarly, FED. R. CIV. P. SUPP. R. F(3), which addresses limitation of liability in admiralty and maritime claims, such as the instant case, supports this understanding of the statute's scope. The rule provides that, "[o]n application of the plaintiff the court shall enjoin the further prosecution of any *action or proceeding* against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action" (emphasis added). Like § 2361, Supplemental Rule F(3) only empowers a court to enjoin the prosecution of other actions. The rule does not permit a court to foreclose particular arguments in cases not subject to the stay.

10

it from arguing the charters were void *ab initio* in the limitations action is belied by the fact that it did make that argument. In the limitations action, one of ACL's alternative positions, "was that the Bareboat and Fully Found Charters and the amendment were void *ab initio* and DRD was illegally in possession of the MEL OLIVER at the time of the collision." Under this theory, ACL alleged that it was not liable for the collision because it had no connection to the tug at the time of the accident—DRD was the true possessor, though unlawfully. In short, ACL was able to take this position in the limitations action. The declaratory judgment stay order did not foreclose this position, or require the argument that the charters were valid.

Rather, it appears that ACL chose to assert that the charters were valid in the limitations action. This is not the same as a district court requiring a party to take a specific position, as in *Zedner*. In complex litigation such as this, litigants must routinely make strategic choices and weigh for themselves the consequences of each option. While the stay order put ACL to a choice, it neither forced ACL to argue that the charters were valid, nor prevented it from arguing that the charters were void *ab initio*. Accordingly, the district court did not require ACL to adopt the position it later sought to contradict, and it is not inequitable to apply judicial estoppel.

## III

For the foregoing reasons, we hold that the district court did not abuse its discretion in dismissing the declaratory judgment action on grounds of judicial estoppel.

AFFIRMED.