ACCEPTED
05-15-00626-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
10/27/2015 9:14:48 PM
LISA MATZ
CLERK

NO. 05-15-00626-CV

IN THE FIFTH COURT OF APPEALS
DALLAS, TEXAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
10/27/2015 9:14:48 PM
LISA MATZ
Clerk

ARGENT DEVELOPMENT, L.P.,

*Appellant,*

v.

LAS COLINAS GROUP, L.P., and BILLY BOB BARNETT,

*Appellees.*

On Appeal from the 134th District Court, Dallas, Texas
Cause No. DC-13-13507

## APPELLEES' BRIEF

J. Robert Arnett II
**CARTER SCHOLER ARNETT HAMADA
& MOCKLER, PLLC**
8150 N. Central Expy., Ste. 500
Dallas, Texas 75206
Tel: (214)-550-8188
Fax: (214)-550-8185

**ATTORNEY FOR LAS COLINAS
GROUP, L.P. AND BILLY BOB
BARNETT**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... ii

INDEX OF AUTHORITIES ................................................................... iv

STATEMENT OF THE CASE ............................................................... vii

STATEMENT REGARDING ORAL ARGUMENT ............................ viii

ISSUES PRESENTED ........................................................................... ix

STATEMENT OF FACTS ...................................................................... 1

I.     LCG enters into a development agreement with the City of Irving to develop and subsequently lease from the City an entertainment center .................................... 1

II.    LCG executes a promissory note to Argent, and seven months later Barnett agrees to the conditional Guaranty ................................................................................ 2

III.   The LCG Development Agreement expires pursuant to its own terms on August 6, 2012, and litigation ensues .............. 4

IV.   The City makes a deal with a new developer and settles the LCG-City Lawsuit ...................................................... 6

V.    Argent files suit against LCG and Barnett and the trial court properly grants summary judgment in favor of Barnett on the Guaranty ............................................................... 9

SUMMARY OF THE ARGUMENT ...................................................... 10

STANDARD OF REVIEW .................................................................... 12

ARGUMENT ......................................................................................... 12

I.     LCG's "release" of its claims arising under the LCG Development Agreement was not a "transfer" of an interest in that contract ............................................................. 13

II.     That the City and LCG entered into a settlement agreement involving the City's new developer paying money to LCG does not establish that LCG transferred its interest in the LCG Development Agreement ......................... 21

III.    LCG did not sell, assign, or transfer its interest in the Development Agreement because it expired and terminated by its own terms ....................................................... 23

        A.      The overwhelming evidence establishes the LCG Development Agreement expired before any alleged transfer ................................................................. 23

        B.      Judicial estoppel cannot apply because the required elements of estoppel are met .............................. 27

CONCLUSION ............................................................................... 32

CERTIFICATE OF SERVICE ........................................................... 35

CERTIFICATE OF COMPLIANCE WITH RULE 9.4(i) ...................... 36

# INDEX OF AUTHORITIES

**CASES**                                                                          **PAGE(S)**

*Bob Short & Assocs., Inc. v. Heritage Res., Inc.*, No.
05-95-00472-CV, 1996 WL 223680 (Tex. App.—
Dallas Apr. 30, 1996, writ denied) ........................................................... 31

*Buck v. Palmer*, 382 S.W.3d 525 (Tex. 2012) ......................................... 12

*Carpet Servs., Inc. v. George A. Fuller Co. of Texas,
Inc.*, 802 S.W.2d 343 (Tex. App.—Dallas 1990) (en
banc), aff'd, 823 S.W.2d 603 (Tex. 1992) ................................................. 16

*City of Brownsville v. AEP Texas Central Co.*, 348
S.W.3d 348 (Tex. App.—Dallas 2011, pet. denied) .......................... 19, 20

*City of San Antonio v. Valemas, Inc.*, No. 04-11-
00768-CV, 2012 WL 2126932 (Tex. App.—San
Antonio June 13, 2012, no pet.) ....................................................... 19, 20

*Dearborn Stove Co. v. Caples*, 236 S.W.2d 486 (Tex.
1951) .......................................................................................................... 20

*e2 Creditors' Trust v. Farris (In re e2
Communications, Inc.)*, 320 B.R. 849 (Bankr. N.D.
Tex. 2004) ............................................................................................ 18-19

*Edwards v. Kaye*, 9 S.W.3d 310 (Tex. App.—Houston
[14th Dist.] 1999, pet. denied) ........................................................... 15, 16

*Flying Diamond-W. Madisonville L.P. v. GW
Petroleum, Inc.*, No. 10-07-00281-CV, 2009 WL
2707405 (Tex. App.—Waco Aug. 26, 2009, no pet.) ............................... 31

*Gabarick v. Laurin Maritime (America) Inc.*, 753
F.3d 550 (5th Cir. 2014) ........................................................................... 29

*Galley v. Apollo Associated Servs., Ltd.*, 177 S.W.3d
523 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ........................... 28, 30

*Griffin Indus. Inc. v. Foodmaker, Inc.*, 22 S.W.3d 33
(Tex. App.—Houston [14th Dist.] 2000, pet. denied) ............................ 23

*Grohman v. Kahlig*, 318 S.W.3d 882 (Tex. 2010) .............................. 14-17

*Kastigar v. U.S.*, 406 U.S. 441 (1972) ...................................................... 16

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742
(Tex. 2003) ................................................................................................ 12

*Lester v. First American Bank*, 866 S.W.2d 361 (Tex.
App.—Waco 1993, writ denied) ........................................................ 15, 16

*Mangione v. Gov't Personnel Mutual Life Ins. Co.*,
No. 04-01-00655-CV, 2002 WL 1677457 (Tex. App.—
San Antonio July 24, 2002, pet. denied) ........................................... 23-24

*Metroflight, Inc. v. Shaffer*, 581 S.W.2d 704 (Tex.
Civ. App.—Dallas 1979, writ ref'd n.r.e.) ............................................. 28

*Nine Syllables, LLC v. Evans*, No. 05-13-01677-CV,
2015 WL 3932751 (Tex. App.—Dallas June 26, 2015,
no pet. hist.) ........................................................................ 27, 28, 31-32

*Pagosa Oil and Gas, LLC v. Marrs and Smith P'ship*,
323 S.W.3d 203 (Tex. App.—El Paso 2010, pet.
denied) ................................................................................................ 19, 20

*Pleasant Glade Assembly of God v. Schubert*, 264
S.W.3d 1 (Tex. 2008) .......................................................................... 29, 30

*Reynolds-Penland Co. v. Hexter & Lobello*, 567
S.W.2d 237 (Tex. Civ. App.—Dallas 1978, writ
dism'd) ...................................................................................................... 16

*Sims v. State*, 82 S.W.3d 730 (Tex. App.—Waco
2002), aff'd, 117 S.W.3d 267 (Tex. Crim. App. 2003). ............................ 17

*Southtex 66 Pipeline Co. v. Spoor*, 238 S.W.3d 538
(Tex. App.—Houston [14th Dist.] 2007, pet. denied) ............................ 18

*Texas Capital Sec. Mgmt., Inc. v. Sandefer*, 80 S.W.3d 260 (Tex. App.—Texarkana 2002, pet. struck) .......................... 30

*Texas Real Estate Commission v. Nagle*, 767 S.W.2d 691 (Tex. 1989).............................................................................. 30

*Travelers Indem. Co. of Ill. v. Fuller*, 892 S.W.2d 848 (Tex. 1995)..................................................................................... 18

*Turner v. PV Int'l Corp.*, 765 S.W. 455 (Tex. App.—Dallas 1988), writ denied, 778 S.W.2d 865 (Tex. 1989) ...................................................................................... 28

## OTHER AUTHORITIES

BLACK'S LAW DICTIONARY (9th ed. 2009)...................................... 13-15, 17

TEX. R. CIV. P. 166a. ........................................................................ 12

## STATEMENT OF THE CASE

*Nature of the case*:        This is suit over a promissory note and a conditional guaranty. CR 8-50.[1]

*Course of proceedings*:        After Argent Development, L.P., sued to collect on a promissory note against Las Colinas Group, L.P. ("LCG") and a conditional guaranty against Billy Bob Barnett, CR 11-12, Barnett moved for summary judgment on Argent's claims. CR. 718-1619.

*Trial Court's Disposition*:        After briefing and oral argument, the trial court granted Barnett's summary judgment motion on Argent's claims against him. CR 1800. Pursuant to an agreement between LCG and Argent, the trial court then entered an agreed judgment on Argent's claims against LCG. CR 1802-04.

---

[1] All citations to the Clerk's Record appear as "CR __."

## STATEMENT REGARDING ORAL ARGUMENT

Barnett requests oral argument. While Barnett believes this is a straightforward case of contract interpretation, oral argument may assist the Court in addressing Argent's creative arguments regarding the legal principles at issue and their application to the facts.

# ISSUES PRESENTED

Did the trial court properly grant Barnett's summary judgment motion where a condition precedent to his liability under a guaranty agreement was not satisfied?

**STATEMENT OF FACTS**

**I.    LCG enters into a development agreement with the City of Irving to develop and subsequently lease from the City an entertainment center.**

On December 11, 2008, LCG and the City of Irving entered into a Entertainment Center Development Agreement (the "LCG Development Agreement"), for LCG to design and develop an entertainment center that would be owned by the City and leased and operated by LCG under a long-term lease. CR 747-48, 751-801. The LCG Development Agreement contemplated contributions towards the cost of the entertainment center by both LCG (from private funds) and the City (from bond proceeds). CR 748, 771-81.

The LCG Development Agreement contained a deadline for LCG to close on its private funding, after the City notified LCG of the amount of the estimated net bond proceeds. After several amendments, this deadline was August 6, 2012. CR 748, 860. The last amendment to the agreement specifically provided, "If the Closing Date does not occur on or before August 6, 2012, then this Agreement automatically terminates without any necessity for any further action by either party." CR 860.

1

**II. LCG executes a promissory note to Argent, and seven months later Barnett agrees to the conditional Guaranty.**

One of LCG's sources of funding for its pre-development costs was a loan from Argent. On December 1, 2010, LCG and Argent entered into a Promissory Note. CR 863-65. The maturity date—and LCG's obligation to pay—under the Promissory Note was triggered by three alternative events. *Id.*

"Doc" Cornutt, the owner of Argent, asked Barnett to personally guaranty the Promissory Note from LCG, but Barnett declined to do so. CR 745. Cornutt told Barnett he wanted to make sure he was repaid if LCG received proceeds from bonds the City was going to issue for the public financing piece of the entertainment center, or if LCG sold its Development Agreement to someone else. *Id.* Barnett told Cornutt that if one of those things happened, and LCG did not repay the Promissory Note, Barnett would, but otherwise he was not going to guaranty the LCG Promissory Note. *Id.* Based on that understanding, Barnett and Argent entered into a Guaranty Agreement of the Promissory Note on July 27, 2011. CR 868.

The Guaranty placed conditions on Barnett's liability:

2

In the event the Maker [LCG] should not perform the obligations specified in Section 1 on or before the times they are to be performed, subject to the conditions stated in this paragraph 2, the Guarantor [Barnett] guarantees and agrees that Guarantor shall immediately pay, do, and perform all such obligations for the benefit of the Lender [Plaintiff], conditioned only upon the passage of thirty (30) days after the earlier of: a) issuance (the "Bond Issuance") by the City of Irving, Texas, of city bonds, any portion of the proceeds of which are applied, or publicly announced to be for application, to the project costs for the project commonly referred to as the "Irving Entertainment Center" (the "Entertainment Center") to be constructed at West Las Colinas Boulevard and Fuller Drive in Irving, Texas, or b) the sale, assignment, or other transfer by Las Colinas Group of all or any interest in that one certain Development Agreement by and between the City of Irving and Las Colinas Group, dated December 11, 2008 (as amended, the "Development Agreement"), or a change in ownership of more than fifty percent (50%) of Las Colinas Group ("LCG Transfer"). The Bond Issuance shall provide public financing for the Entertainment Center construction, as represented by Maker to Lender, and permit Maker to fund the commencement of construction of the Entertainment Center, as well as provide liquidity for payment of the Agreed Credit. *Unless and until the passage of thirty (30) days after the earlier of the Bond Issuance or LCG Transfer shall occur, Guarantor shall not be liable hereunder for all or any portion of the Agreed Credit*.

CR 745, 868 (emphasis added).

The rationale behind the condition on LCG selling, assigning, or transferring the LCG Development Agreement was to assure Argent that if LCG sold, assigned, or transferred its interest in the LCG

3

Development Agreement to someone else who took over the benefits of the LCG Development Agreement, then Argent would be repaid either by LCG or Barnett. CR 745. It was never intended or contemplated that this condition would be triggered by LCG releasing claims against the City arising out of or related to the LCG Development Agreement. CR 745, 867. Indeed, according to the attorney who negotiated the Guaranty, it was not discussed in any negotiations in which he participated that the condition would be triggered by LCG releasing claims against the City arising out of settlement of litigation related to the LCG Development Agreement. CR 867.

## III. The LCG Development Agreement expires pursuant to its own terms on August 6, 2012, and litigation ensues.

Due to problems with obtaining an appropriate rating of its bonds, the City could not proceed with its proposed bond package. CR 749. LCG attempted to work with the City to restructure the financing and sought an extension of the August 6, 2012 deadline. CR 749. The City rejected LCG's proposal to extend the deadline, and the LCG Development Agreement expired and terminated by its own terms on August 6, 2012. CR 749, 860.

4

On August 7, 2012, LCG filed a lawsuit against the City in the 193rd District Court of Dallas County, Texas (the "LCG-City Lawsuit"), over the termination of the LCG Development Agreement. CR 749. LCG sought damages, in excess of $139 million, for the City's wrongful conduct that resulted in the termination of the LCG Development Agreement. CR 1044-45. Pleading in the alternative, LCG sought specific performance on the theory that the City should be estopped from relying on the termination of the LCG Development Agreement. CR 1045.

LCG's live pleading, Plaintiff's Third Amended Petition, recognized that the LCG Development Agreement had expired by its own terms. CR 1021-22. In its Original Answer, the City alleged, "The development contract between the City and LCG, however, has fully expired by its own terms." CR 1053. The City filed a Cross-Motion for Summary Judgment, in which it stated as an undisputed fact that "the Closing Date did not occur by August 6, 2012, and the Development Agreement therefore automatically terminated on that date." CR 1082. The City further stated in its motion, "As an initial matter, LCG does

5

not (and cannot) dispute that the Development Agreement expired by its terms on August 6, 2012." CR 1108.

In the LCG-City Lawsuit, LCG sought summary judgment on the City's immunity defenses to its claims of money damages for breach of contract and the alternative remedy of specific performance. CR 1120-54. On March 18, 2013, the 193rd Court entered an Amended Order that neither the City's sovereign immunity defenses nor the Texas Local Government Code precluded LCG's claims, without ruling on the merits of the claims. CR 1575-76. The court further granted permission for an interlocutory appeal. CR 1576.

## IV. The City makes a deal with a new developer and settles the LCG-City Lawsuit.

On May 9, 2013, the City entered into a Memorandum of Understanding (the "MOU") with a new developer, Irving Music Factory, LLC ("IMF"), to design, construct, and operate an entertainment center on the site that had been covered by LCG's Development Agreement. CR 876-91. The MOU stated that the LCG Development Agreement expired by its terms on August 6, 2012, and that the City desired to negotiate and enter into a separate and independent development agreement with IMF. CR 877. The MOU

included drawings and renderings depicting IMF's own independent plans and concepts for the entertainment center. CR 883-90. IMF later assigned the MOU, with the City's consent, to ARK Group of Irving, Inc. ("ARK"). CR 892-96.

On July 25, 2013, the City adopted a resolution approving an Entertainment Center Development Agreement (the "ARK Development Agreement") between the City and ARK. CR 909. The resolution expressly stated that the LCG Development Agreement "terminated by its terms on August 6, 2012." *Id*. The ARK Development Agreement—which differed in many respects from the LCG Development Agreement—also expressly stated that the LCG Development Agreement "terminated by its terms on August 6, 2012." CR 918. The City further adopted a resolution directing the City Attorney to take all appropriate action related to settlement of the LCG-City Lawsuit, which resolution stated that the LCG Development Agreement "terminated by its terms on August 6, 2012." CR 976.

At the same time, the City and LCG entered into a Settlement Agreement with respect to the LCG-City Lawsuit, which contained the following recital:

7

WHEREAS, the ***LCG Development Agreement terminated on August 6, 2012***, thereby also terminating the Lease; and

CR 749, 1580-81, 1592 (emphasis added). In the Settlement Agreement, LCG:

> ***unconditionally and irrevocably releases and discharges*** the City . . . from any and all claims, debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, losses, judgments, executions, orders, fees, costs, expenses, and liabilities whatsoever of any kind, whether in law or in equity, whether now known or unknown, accrued or unaccrued, suspected or unsuspected, of any nature whatsoever, which the LCG Releasors have or ever had against the City . . . from the beginning of time to the Effective Date of this Agreement, in any way arising from or related to (i) the LCG Development Agreement . . .

CR 1584 (emphasis added). The release was "intended to be a broad, general release of all claims the LCG Releasors have or could ever have against the City Released Group." CR 1585.

The settlement between LCG and the City was funded by ARK in order to end the litigation between the City and LCG and clear the way for ARK to obtain its own development agreement with the City, and LCG and ARK entered into a separate settlement agreement. CR 749, 1584, 1602. As a result of the Settlement Agreement, the 193rd Court entered an Agreed Order of Dismissal with Prejudice in the LCG-City

8

Lawsuit on August 5, 2013, in which it dismissed all claims in their entirety with prejudice. CR 1578.

**V.    Argent files suit against LCG and Barnett and the trial court properly grants summary judgment in favor of Barnett on the Guaranty.**

On November 13, 2013, Argent filed its lawsuit against LCG and Barnett, alleging that the release of claims in the Settlement Agreement triggered LCG's obligations to pay under the Promissory Note and satisfied the condition precedent to Barnett's liability under the Guaranty. Argent conceded that the other alternative trigger events under the Promissory Note and Guaranty had not occurred. Argent moved for summary judgment, which the 193rd Court denied. CR 86, 717.

Barnett then moved for summary judgment on the grounds that a condition precedent to Barnett's liability under the Guaranty had not occurred because a release of claims arising under a contract is not a transfer of the contract and LCG could not have sold, assigned, or transferred its interest in the LCG Development Agreement because it had expired by its own terms. CR 718. The trial court granted

9

Barnett's motion and dismissed Argent's claims against Barnett with prejudice. CR 1816.

Because the Promissory Note contained an alternative trigger event for the maturity date, the passage of December 31, 2014 (CR 863), LCG stipulated to the entry of an agreed judgment on the Promissory Note.[2] CR 1808-10. The Guaranty, however, did not include this alternative trigger event. CR 868.

Argent appealed. CR 1811-16.

## SUMMARY OF THE ARGUMENT

The court should affirm the trial court's judgment because summary judgment was proper in this case. The undisputed evidence establishes that none of the conditions precedent to Barnett's obligations to pay under the Promissory Note or Guaranty occurred. Argent therefore cannot maintain a claim for breach of the Guaranty against Barnett.

LCG simply released its claims against the City relating to the LCG Development Agreement. Under these circumstances, the plain,

---

[2] LCG's interest in this appeal is restricted to the date the promissory note matured, which determines when default rate interest began accruing. CR 863, 1808-09. LCG joins in Barnett's arguments, except the issue of privity for the application of judicial estoppel.

ordinary meanings of "release" and "transfer" are different. Argent attempts to evade this distinction by inappropriately conflating *claims* arising under a contract with an *interest* in the contract. By signing the Settlement Agreement, however, LCG merely released any claims it had arising under the LCG Development Agreement, which as a matter of Texas law is not the contract or any right or interest in the contract. ARK supported this arrangement to end the litigation between LCG and the City in order to clear the way for its own, new development— not to acquire an interest in the LCG Development Agreement.

Furthermore, LCG could not have transferred any interest in the LCG Development Agreement because it had expired and terminated on its own terms eleven months before LCG and the City entered into the Settlement Agreement. LCG repeatedly acknowledged that the LCG Development Agreement terminated. Argent attempts to suppress this fact by resorting to judicial estoppel but fails to show that each required element of judicial estoppel is met: there is no sworn statement, actual inconsistency, or advantage gained by LCG's alternative pleading. Nor was Barnett in privity with LCG. Argent has failed to show that LCG sold, assigned, or transferred its interest in the LCG Development

11

Agreement and therefore cannot establish that a condition precedent to Barnett's liability under the Guaranty has been satisfied. This Court should therefore affirm the judgment.

## STANDARD OF REVIEW

Summary judgments trigger *de novo* appellate review. *See, e.g.*, *Buck v. Palmer*, 382 S.W.3d 525, 527 (Tex. 2012). Traditional motions stand if the movant conclusively disproved an opponent's vital fact or conclusively proved their own. TEX. R. CIV. P. 166a. If "the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact," an award of summary judgment should be affirmed. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (internal quotation marks omitted). The trial court correctly granted Barnett's summary judgment motion under these standards.

## ARGUMENT

The trial court properly granted summary judgment because LCG's release of claims arising under the LCG Development Agreement was not a "sale, assignment, or other transfer" of an interest in the LCG Development Agreement. Nor could LCG have transferred an interest in the LCG Development Agreement because it expired and terminated

12

by its own terms nearly a year earlier. Therefore, the condition precedent to Barnett's liability under the Guaranty was not satisfied and Barnett has no liability to Argent.

## I. LCG's "release" of its claims arising under the LCG Development Agreement was not a "transfer" of an interest in that contract.

The parties did not agree that a release of claims against the City arising under the LCG Development Agreement would trigger LCG's obligation to pay or Barnett's liability under the Guaranty. In the Settlement Agreement, LCG only released its claims against the City relating to the LCG Development Agreement. CR 1584. LCG did not "release" the LCG Development Agreement itself, and did not purport to sell, assign, or transfer any interest in the LCG Development Agreement to anyone. Further, the LCG Development Agreement itself is distinct from claims that arise under it.

The plain, ordinary meanings of "transfer" and "release" are different. The principal definition of "release" is, "Liberation from an obligation, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced." BLACK'S LAW DICTIONARY 1403 (9th ed. 2009). That concept is distinct and different

from the concept of "transferring" something. "Transfer" when used as a verb means, "1. To convey or remove from one place to another; to pass or hand over from one to another, esp. to change over the possession or control of. 2. To sell or give." *Id*. at 1636. LCG's release of claims arising under the LCG Development Agreement did not convey, hand over, or change the possession and control of the LCG Development Agreement to anyone, and was not a "transfer" of an interest in that contract. Instead, it was the giving up of claims against the City. The plain meaning of the language in the Guaranty is consistent with the parties' intention at the time the Guaranty was executed. CR 745, 867.

Argent's reliance on *Grohman v. Kahlig*, 318 S.W.3d 882 (Tex. 2010), is misplaced. *Grohman* did not decide whether releasing claims arising under a contract constitutes transferring an interest in the contract. *Grohman*, 318 S.W.3d at 888. In fact, there was no "release" involved in the case at all. Instead, the issue was whether the conversion of corporations to limited partnerships constituted a "transfer" of their stock, and the Court concluded it did not. *Id*.

14

The sole reference to "release" in *Grohman* was in a quote from Black's Law Dictionary of one of three alternative definitions of "transfer" when used as a noun, and in which "release" appears among several examples of disposing of or parting with an asset. *Id.* (quoting BLACK'S LAW DICTIONARY 1636 (9th ed. 2009)). From this quote, Argent draws the fallacious conclusion that "release" always means "transfer." That is an unjustified extrapolation from a quoted definition. Further, words have different meanings, depending on how they are used. Another definition of the noun "transfer," and one applicable here, is, "A conveyance of property or title from one person to another." BLACK'S LAW DICTIONARY 1636 (9th ed. 2009). LCG's release of claims arising under the LCG Development Agreement did not convey property or title to anyone, and was not a "transfer."

The single reference to "release" in *Grohman* is, at most, <u>dictum</u>— an observation or remark made concerning some rule, principle, or application of law suggested in a particular case, which observation or remark is not necessary to the determination of the case. *See Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *Lester v. First American Bank*, 866 S.W.2d 361, 363 (Tex.

15

App.—Waco 1993, writ denied). Dictum does not create binding precedent. *Edwards*, 9 S.W.3d at 314; *Lester*, 866 S.W.2d at 363; *Reynolds-Penland Co. v. Hexter & Lobello*, 567 S.W.2d 237, 241 (Tex. Civ. App.—Dallas 1978, writ dism'd). Broad language in an opinion that is unnecessary to the court's decision cannot be considered binding authority. *Kastigar v. U.S.*, 406 U.S. 441, 454-55 (1972).

Instead, the binding effect of a prior decision is determined by reference to the important facts in that case and to the decision actually made by that court. *See Edwards*, 9 S.W.3d at 314; *Lester*, 866 S.W.2d at 363; *Reynolds-Penland*, 567 S.W.2d at 241. A prior decision is binding precedent only if it addressed the precise question presented in the current case, and if the facts on which the prior case was based are substantially similar to those in the current case. *Lester*, 866 S.W.2d at 363; *Carpet Servs., Inc. v. George A. Fuller Co. of Texas, Inc.*, 802 S.W.2d 343, 344 (Tex. App.—Dallas 1990) (en banc), *aff'd*, 823 S.W.2d 603 (Tex. 1992).

Applying these principles to *Grohman* makes clear that Argent's extrapolation of *Grohman* is incorrect and certainly not controlling in this case. The precise question here—does releasing of claims arising

16

under a contract constitute transferring an interest in the contract—was not addressed in *Grohman*. Nor are the facts of this case remotely similar to the facts in *Grohman*. And, the inclusion of "release" among examples in the definition was not necessary to the Court's determination. The result would have been the same if the definition had omitted the examples, *i.e.*, "Any mode of disposing of or parting with an asset or an interest in an asset."

Argent's argument that the quotation of one definition in an opinion is a binding conclusion that such definition—in its entirety—applies in all cases and circumstances and excludes all other definitions[3] is illogical. And, Argent's authorities do not support that proposition. *Sims v. State* was a criminal case involving a defendant challenging whether the evidence was legally sufficient to establish he committed a "constructive transfer" of a controlled substance. 82 S.W.3d 730, 733-34 (Tex. App.—Waco 2002), *aff'd*, 117 S.W.3d 267 (Tex. Crim. App. 2003). The court found that the definition of "constructive transfer" provided by an earlier criminal case was not dictum but rather necessary to its holding, and applied it against the defendant. *Id.* at

---

[3] *See* BLACK'S LAW DICTIONARY 1403 (setting forth eight different definitions of "release") *and compare* BLACK'S LAW DICTIONARY 1636 (setting forth five different definitions of "transfer" as a noun and verb).

17

733-34. Argent's other authority actually undermines its argument because the Court found language in its earlier cases to be dicta because of the differences between those cases and the one before it. *Travelers Indem. Co. of Ill. v. Fuller*, 892 S.W.2d 848, 851 n. 3 (Tex. 1995).

Argent attempts to salvage its "transfer" argument with two inapposite cases. First, Argent repeats its flawed *Grohman* argument with *Southtex 66 Pipeline Co. v. Spoor*, 238 S.W.3d 538, 548 (Tex. App.—Houston [14th Dist.] 2007, pet. denied), which quoted the same definition of "transfer" from Black's Law Dictionary. *Southtex* did not determine whether a release is a transfer, and certainly did not hold that a release is always a transfer. The issue in *Southtex* was whether rights in an easement acquired through a condemnation proceeding could be assigned through a lease. *See Southtex*, 238 S.W.3d at 548. As with *Grohman*, no release was involved, and therefore the issue was not integral to or even presented in the determination of that case. *See id.*

Next, Argent relies on *e2 Creditors' Trust v. Farris (In re e2 Communications, Inc.)*, 320 B.R. 849 (Bankr. N.D. Tex. 2004), but fails to recognize that the court there addressed "whether a release is a 'transfer' *under the Bankruptcy Code.*" *e2 Creditors' Trust*, 320 B.R. at

18

856 (emphasis added). The court based its decision on the definition of "transfer" under the Bankruptcy Code and its legislative history, which revealed that the definition was drafted to be as broad as possible. *Id.* The issue was whether a release of claims constituted a "transfer" for purposes of fraudulent transfer and preference claims. The court first concluded that a claim or cause of action is property of the estate, and then concluded that releasing those claims was a method of disposing of or parting with those claims. Of course, in this case, what was required was a "transfer" of an interest in the contract itself, not claims arising under the contract.

*Claims* arising under a contract do not constitute an *interest* in the contract. Texas law distinguishes between a contracting party's ability to assign rights under a contract and that party's ability to assign causes of action arising from the breach of that contract. *See City of San Antonio v. Valemas, Inc.*, No. 04-11-00768-CV, 2012 WL 2126932 at *8 (Tex. App.—San Antonio June 13, 2012, no pet.); *City of Brownsville v. AEP Texas Central Co.*, 348 S.W.3d 348, 358 (Tex. App.—Dallas 2011, pet. denied); *Pagosa Oil and Gas, LLC v. Marrs and Smith P'ship*, 323 S.W.3d 203 (Tex. App.—El Paso 2010, pet. denied). Texas

19

courts uniformly hold that anti-assignment clauses in contracts do not prohibit a party from assigning causes of action arising from an alleged breach of the contract. *See Dearborn Stove Co. v. Caples*, 236 S.W.2d 486, 490 (Tex. 1951); *Valemas*, 2012 WL 2126932 at *8; *AEP Texas*, 348 S.W.3d at 358; *Pagosa Oil*, 323 S.W.3d at 212.

In the anti-assignment clause in *Valemas*, Valemas agreed not to "assign, transfer, convey, sub-let or otherwise dispose of this contract, or any portion thereof, or any right, title, or interest in, to or under the same." *Valemas*, 2012 WL 2126932 at *8. The court held that the clause did not preclude Valemas from assigning causes of action arising from an alleged breach of the contract because, "A breach of contract claim is not a right or interest identified in the contract." *Id.* at *8-9.

If assigning a cause of action for breach of a contract does not constitute an assignment or transfer of the contract itself or a right or interest in the contract, then releasing such claims cannot constitute a transfer of the contract or any right or interest in the contract. LCG did not sell, assign, or otherwise transfer the LCG Development Agreement or any interest in the LCG Development Agreement. It simply released its claims arising under the contract, which as a matter of Texas law is

20

not the contract or any right or interest in the contract. Therefore, the condition precedent to Barnett's liability under the Guaranty was not satisfied.

Argent repeatedly emphasizes that, according to the Settlement Agreement, LCG released its "covenants, contracts [and] agreements" in "any way arising from or related to" the "development agreement." Brief at 15, 16, 19. This is an attempt at misdirection. The full language of the Settlement Agreement demonstrates that this provision "releases" and "discharges" the City from "claims" of whatever kind or description "arising from" or "related to" the LCG Development Agreement. CR 1584-86. It does not "transfer" anything to anyone. And, "contracts" "arising from or related to" the LCG Development Agreement are distinct from the LCG Development Agreement itself. Accordingly, the condition precedent to Barnett's liability under the Guaranty was not satisfied.

**II. That the City and LCG entered into a settlement agreement involving the City's new developer paying money to LCG does not establish that LCG transferred its interest in the LCG Development Agreement.**

Argent erroneously argues that the City entering into a settlement agreement with LCG that (1) involved ARK paying money to

21

LCG and Barnett and (2) cleared the way for ARK to proceed with its own development agreement for the entertainment center somehow established LCG transferred its interest in the LCG Development Agreement to ARK. Brief at 13-14. However, ARK did not acquire or succeed to any of LCG's rights under the LCG Development Agreement by virtue of the Settlement Agreement but instead independently obtained a new and different development agreement based upon the MOU it had entered into with the City on May 9, 2013. CR 726-27.

It is undisputed that the City and LCG entered into the Settlement Agreement to resolve claims between them in the LCG-City Lawsuit. CR 726-27, 876, 1580-81, 1584, 1592. The mere fact that ARK funded the Settlement Agreement *to end the litigation* between the City and LCG—including LCG's $139 million claim for damages for the termination of the LCG Development Agreement—and clear the way for ARK to proceed with its own development agreement with the City does not establish that LCG transferred its interest in the LCG Development Agreement to ARK. There is a material difference between entering into a new and independent agreement and assuming an existing

22

agreement. Because this case involves the former, Argent's inventive arguments are without merit.

## III. LCG did not sell, assign or transfer its interest in the LCG Development Agreement because it had expired and terminated by its own terms.

LCG could not have sold, assigned, or transferred any interest in the LCG Development Agreement when it entered into the Settlement Agreement with the City because the LCG Development Agreement had terminated on its own terms on August 6, 2012, almost a year before LCG and the City entered into the Settlement Agreement. Judicial estoppel does not apply and cannot change this result.

### A. The overwhelming evidence establishes the LCG Development Agreement expired before any alleged transfer.

Argent's claim that LCG transferred its interest in the LCG Development Agreement when it settled with the City on July 24-25, 2013 fails in light of the undisputed fact that the LCG Development Agreement expired on its own terms more than eleven months earlier. *See Griffin Indus. Inc. v. Foodmaker, Inc.*, 22 S.W.3d 33, 36 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("Unlike the mythical Phoenix, contracts that terminate by their express terms do not rise again."); *see also Mangione v. Gov't Personnel Mutual Life Ins. Co.*, No. 04-01-00655-

23

CV, 2002 WL 1677457, at *3 (Tex. App.—San Antonio July 24, 2002, pet. denied). The facts demonstrate that the LCG Development Agreement terminated on its own terms on August 6, 2012:

- The LCG Development Agreement, as amended, provided that, "If the Closing Date does not occur on or before August 6, 2012, then this Agreement automatically terminates without any necessity for any further action by either party." CR 860.

- The Closing Date did not occur on or before August 6, 2012, and the LCG Development Agreement expired and terminated pursuant to its own terms on that date. CR 749.

- The May 9, 2013 MOU between the City and IMF recognized that the LCG Development Agreement "terminated by its terms on August 6, 2012." CR 877.

- The City's resolution approving the ARK Development Agreement expressly stated that the LCG Development Agreement "terminated by its terms on August 6, 2012." CR 909.

- The ARK Development Agreement contains a recital that the LCG Development Agreement "terminated by its terms on August 6, 2012." CR 918.

- In the Settlement Agreement between LCG and the City, the parties specifically agreed that, "the LCG Development Agreement terminated on August 6, 2012." CR 1581.

- The City's resolution approving the settlement with LCG expressly stated that the LCG Development Agreement "terminated by its terms on August 6, 2012." CR 976.

In the LCG-City Lawsuit, LCG alleged that, "the Development Agreement would automatically terminate if LCG's financing was not closed by August 6, 2012." CR 1027. It further alleged that the City

24

Council held a special meeting on "August 6, 2012, the final day of the term of the [LCG] Development Agreement," to consider a proposed resolution to extend the term of the agreement, but the resolution was voted down. CR 1038. It alleged a claim for breach of contract seeking money damages resulting from the loss of LCG's rights under the LCG Development Agreement. CR 1044-45. Pleading in the alternative, it sought specific performance ordering the City to issue bonds, arguing that the City by virtue of its conduct should be estopped from arguing that the LCG Development Agreement had expired. CR 1045.

Argent does not refute that the LCG Development Agreement, as amended, provided that, "If the Closing Date does not occur on or before August 6, 2012, then this Agreement automatically terminates without any necessity for any further action by either party." CR 738, 860. It is further undisputed that the Closing Date did not occur. As admitted by Argent, the City, ARK, and LCG have consistently represented that the LCG Development Agreement expired on August 6, 2012 in various communications, agreements, and resolutions. CR 738-39. Because the undisputed facts show that the LCG Development Agreement

25

terminated well before the settlement, there was nothing left that could have been transferred.

While Argent makes an argument about the "four corners" of the Settlement Agreement, it overlooks the express language that eviscerates its argument. The Settlement Agreement expressly states, "the LCG Development Agreement terminated on August 6, 2012." CR 1581. Under Argent's own authorities, this express language conclusively establishes the LCG Development Agreement had terminated.

Argent points to the fact that ARK funded the Settlement Agreement between the City and LCG to claim that the LCG Development Agreement did not expire prior to the alleged "transfer" that purportedly occurred through the Settlement Agreement. Argent's argument that ARK had no other reason to pay Defendants under the Settlement Agreement is incorrect because it is undisputed that this payment was actually made *to end the litigation* between the City and LCG, including the $139 million claim for termination of the LCG Development Agreement. The Settlement Agreement itself expressly provides that "the Parties to this Agreement now desire to resolve their

26

disputes and to compromise and settle all claims which each may have against the other, without any admission of liability on the part of anyone." CR 1581.

Argent fails to explain how ARK's intentions to clear the way for its new development constitutes "an absurd result." Brief at 16. However, the plain language of the Guaranty defeats Argent's claim. The Guaranty does not obligate Barnett if LCG settled a lawsuit over the LCG Development Agreement, regardless of who funded the settlement. Under the unambiguous language of the Guaranty, the Court should affirm the trial court's award of summary judgment.

## B. Judicial estoppel cannot apply because the required elements of estoppel are not met.

Barnett is not judicially estopped by LCG's pleading in the alternative in the LCG-City Lawsuit because the elements for judicial estoppel are not met. Under Texas law, judicial estoppel requires: "(1) a sworn, prior inconsistent statement made in a judicial proceeding; (2) which was successfully maintained in the prior proceeding; (3) not made inadvertently or by mistake, or pursuant to fraud or duress; and (4) which is deliberate, clear, and unequivocal." *Nine Syllables, LLC v. Evans*, No. 05-13-01677-CV, 2015 WL 3932751, at *4 (Tex. App.—

27

Dallas June 26, 2015, no pet. hist.); *Galley v. Apollo Associated Servs., Ltd.*, 177 S.W.3d 523, 528-29 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Judicial estoppel does not apply here for three reasons: (1) there was no sworn, prior inconsistent statement; (2) the position was not successfully maintained; and (3) Barnett was not a party or in privity with a party to the lawsuit.

If there is no sworn inconsistent statement, judicial estoppel cannot apply. *See Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 461 (Tex. App.—Dallas 1988), writ denied, 778 S.W.2d 865 (Tex. 1989); *Metroflight, Inc. v. Shaffer*, 581 S.W.2d 704, 709 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.). Argent can point to no sworn statement, therefore, judicial estoppel cannot apply.

Contrary to Argent's argument, *Nine Syllables* did not abrogate this requirement, but recognized that judicial estoppel requires "a **sworn**, prior inconsistent statement." *Nine Syllables*, 2015 WL 3932751, at *4 (emphasis added). The appellant in *Nine Syllables* argued that judicial estoppel could not apply because the pleading in the prior lawsuit was not sworn. *Id.* at *5. This Court rejected that argument because the pleading was supported by sworn testimony—

28

live testimony at an injunction hearing and in affidavits. *Id.* ("The estoppel in this case is not based solely on Jacque's pleadings in the prior lawsuit. The estoppel arises from Jacque's sworn testimony . . ."). The Court did not endorse the notion proffered by Argent that judicial estoppel does not require a sworn statement.

Additionally, if there is no actual inconsistency,[4] judicial estoppel cannot apply. *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6-7 (Tex. 2008). Here, there is no actual inconsistency—LCG did not plead that the LCG Development Agreement had not terminated by its own terms on August 6, 2012, and indeed, recognized in its pleadings that it had so terminated. CR 1012-13, 1027. LCG, pleading in the alternative, alleged that the City should be estopped from arguing that it had terminated. CR 1045. Reading the pleading as a whole, LCG did not make a deliberate, clear, and unequivocal statement that the LCG Development Agreement had not expired on August 6, 2012.

---

[4] Argent cites *Gabarick v. Laurin Maritime (America) Inc.*, 753 F.3d 550 (5th Cir. 2014) for the proposition that pleading in the alternative does not preclude judicial estoppel. *Gabarick*, however, merely points out that judicial estoppel only applies when all of the elements of estoppel are present. *See Gabarick*, 753 F.3d at 554 (noting that a court's reliance on an alternative argument "makes all the difference."). In that case, the party had convinced the prior court to accept its prior position and prevailed on the merits based on that position. *Id.*

Further, if the party does not gain some advantage by the statement, *e.g.*, some relief from the prior court, judicial estoppel cannot apply. *See Pleasant Glade*, 264 S.W.3d at 8. Also, judicial estoppel does not apply where the party's prior claims were dismissed. *See Galley*, 177 S.W.3d at 529, n. 3. LCG did not obtain any relief on its alternative claim because the 193rd Court did not rule on the merits of that claim— it simply ruled that the City's immunity defenses did not preclude the claim, and later dismissed those claims.

Judicial estoppel also does not apply because Barnett was not in privity with LCG and therefore cannot be bound by LCG's statements in the LCG-City Lawsuit. Privity does not exist merely when persons are interested in the same question, but requires an identity of interest in the legal right actually litigated. *Texas Real Estate Commission v. Nagle*, 767 S.W.2d 691, 694 (Tex. 1989). Privity connotes those who are in law so connected with a party to the earlier suit as to have such an identity of interest that the party represented the same legal right. *See Texas Capital Sec. Mgmt., Inc. v. Sandefer*, 80 S.W.3d 260, 266 (Tex.App.—Texarkana 2002, pet. struck). For example, privity does not exist where a party is involved in both suits but in different capacities.

30

*See Flying Diamond-W. Madisonville L.P. v. GW Petroleum, Inc.*, No. 10-07-00281-CV, 2009 WL 2707405 *6 (Tex. App.—Waco Aug. 26, 2009, no pet.).

Barnett did not have an identity of interest with LCG in the legal rights being litigated in the City-LCG Lawsuit because he was not a party to and had no legal interest in the LCG Development Agreement. The fact that his companies had separate agreements with LCG does not give him a legal interest in LCG's agreement with the City. Accordingly, LCG could not have represented his interests. There also was no evidence that Barnett controlled the prior litigation or was a successor in interest to LCG. Under these circumstances, there is no privity. *See Bob Short & Assocs., Inc. v. Heritage Res., Inc.*, No. 05-95-00472-CV, 1996 WL 223680 *2 (Tex. App.—Dallas Apr. 30, 1996, writ denied).

Argent's reliance on *Nine Syllables* to assert privity exists here is misplaced. In that case, a wife joined a bank in her divorce proceeding, claiming that a note and deed of trust were invalid and subject to forfeiture because the property was her homestead. *Nine Syllables*, 2015 WL 3932751 at *2. She obtained a temporary injunction

preventing the bank from foreclosing. *Id.* She and her new husband then formed a company to buy the note and deed of trust from the bank. *Id.* at \*3. When the new company demanded payment from the husband, he filed a lawsuit seeking declaratory judgment that the note and deed of trust were unenforceable. *Id.* This Court affirmed the trial court's finding that the company was in privity with the wife because she formed the company for the purpose of acquiring the note and deed of trust, she signed the purchase agreement on behalf of the company, she was a part owner and managing member of the company, and she controlled the company's actions in the lawsuit. *Id.* at \*6.

There are no remotely similar facts in this case. Barnett was not an owner or manager of LCG, did not sign any agreements on behalf of LCG, and did not control LCG's actions in the LCG-City Lawsuit. There was no privity and, for this additional reason, judicial estoppel does not apply.

## CONCLUSION

The trial court correctly awarded Barnett summary judgment. The facts here conclusively establish that the LCG Development Agreement terminated by its own terms on August 6, 2012.

32

Consequently, LCG could not have sold, assigned, or transferred the LCG Development Agreement. Moreover, regardless of whether the LCG Development Agreement had terminated or not, the facts conclusively establish that LCG did not sell, assign, or transfer the LCG Development Agreement or any interest in it. Texas law distinguishes between claims arising under a contract and rights or an interest in the contract. This case involves the former, not the latter. A "release" of claims arising under a contract is not a "transfer" of a contract or any interest in it. Accordingly, the Settlement Agreement did not trigger Barnett's obligation to pay under the Guaranty, the condition precedent to Barnett's performance under the Guaranty did not occur, and the trial court's judgment should be affirmed.

Date:_October 27, 2015_____    Respectfully submitted,


*/s/ J. Robert Arnett II*_____
J. Robert Arnett II
Texas Bar No. 01332900
barnett@carterscholer.com
**CARTER SCHOLER ARNETT
HAMADA & MOCKLER, PLLC**
8150 N. Central Expy., Ste. 500
Dallas, Texas 75206
Tel:  (214)-550-8188
Fax:  (214)-550-8185

**ATTORNEY FOR LAS
COLINAS GROUP, L.P. AND
BILLY BOB BARNETT**

## CERTIFICATE OF SERVICE

I certify that on October 27, 2015, I served all counsel of record with a copy of Appellees' Brief via the Court's electronic filing system.

/s/ J. Robert Arnett II
J. Robert Arnett II

35

# CERTIFICATE OF COMPLIANCE WITH RULE 9.4(i)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(B) because this brief contains 6,709 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. This brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(d) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 2011 in 14 font size and Century Schoolbook style.

Date: October 27, 2015          */s/ J. Robert Arnett II*
J. Robert Arnett II
Attorney for Las Colinas Group,
L.P. and Billy Bob Barnett